MANDOUR & ASSOCIATES, APC
JOSEPH A. MANDOUR, III (SBN 188896)
Email: jmandour@mandourlaw.com
BEN T. LILA (SBN 246808)
Email: blila@mandourlaw.com
8605 Santa Monica Blvd., Suite 1500
Los Angeles, CA 90069
Telephone: (858) 487-9300
Facsimile: (858) 487-9390
Attorneys for plaintiff,
TROWBRIDGE SIDOTI LLP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROWBRIDGE SIDOTI LLP, a California Limited Liability Partnership,<br><br>Plaintiffs,<br><br>v.<br><br>KIM LISA TAYLOR, an individual; and SYNDICATION ATTORNEYS, PLLC, a Florida Professional Limited Liability Company,<br><br>Defendants.<br><br>KIM LISA TAYLOR and SYNDICATION ATTORNEYS PLLC, a Florida Professional Limited Liability Company,<br><br>Counterclaimants,<br><br>v.<br><br>TROWBRIDGE SIDOTI LLP, a California Limited Liability Partnership,<br><br>Counterclaim Defendant. | Case No. 8:16-cv-00771-ODW-SK<br><br>**PLAINTIFF TROWBRIDGE SIDOTI LLP'S MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date: August 28, 2017<br>Time: 1:30 pm<br>Courtroom: 5D<br>Judge: Hon. Otis D. Wright II |


# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................1

II.  CHRONOLOGY OF EVENTS ...............................................................2

III. ARGUMENT .............................................................................................5

  A. Defendants' Willful Conduct Establishes Infringement ..............................5

  B. Plaintiff's Mark Can Acquire Distinctiveness. ...........................................8

  C. Registration on the Supplemental Register Is Not Determinative. .................9

  D. Plaintiff Did Not Abandon Its Trademark. ..............................................11

IV.  CONCLUSION .......................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Herron*,
  634 F.3d 1101 (9th Cir. 2011) ....................................................................... 9
*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ..................................................................... 6, 7
*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ................................................................... 6, 7
*Charles of the Ritz Grp. Ltd. v. Quality King Distribs., Inc.*,
  832 F.2d 1317 (2nd Cir. 1987) ...................................................................... 6
*Grupo Gigante SA De CV v. Dallo & Co., Inc.*,
  391 F.3d 1088 (9th Cir. 2004) ................................................................ 6, 7, 9
*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) ..................................................................... 5, 7
*In re Ennco Display Systems Inc.*,
  56 USPQ2d 1279 (TTAB 2000) .................................................................... 8
*In re Loew's Theatres, Inc.*,
  769 F.2d 764 (Fed. Cir. 1985) ..................................................................... 8, 9
*In re Steelbuilding.com*,
  415 F.3d 1293 (Fed. Cir. 2005) ..................................................................... 9
*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) ....................................................................... 6
*Little Caesar Enters. v. Pizza Caesar, Inc.*,
  834 F.2d 568 (6th Cir. 1987) ......................................................................... 6
*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004) ..................................................................... 5, 7
*Silverman v. CBS Inc.*,
  870 F.2d 40 (2nd Cir. 1989) ......................................................................... 11
*United States v. Bao*,
  189 F.3d 860 (9th Cir. 1999) ......................................................................... 7
*United States v. Hale*,
  422 U.S. 171 (1975) ...................................................................................... 7
*United States v. McLaughlin*,
  663 F.2d 949 (9th Cir. 1981) ......................................................................... 7
*United States v. Monroe*,
  943 F.2d 1007 (9th Cir. 1991) ....................................................................... 7

**Statutes**

15 U.S.C. § 1095 ................................................................................................9
15 U.S.C. § 1127 ..............................................................................................11
15 U.S.C. §1091(a) ..........................................................................................10

**Rules**

TMEP § 815.03 .................................................................................................9
TMEP § 816 ....................................................................................................10
TMEP § 816.04 ...............................................................................................10
TMEP §§ 801.02(b) .........................................................................................10

**Regulations**

37 C.F.R. § §2.47, 2.75(a) ...............................................................................10

Plaintiff Trowbridge Sidoti LLP ("Plaintiff") submits its memorandum of points and authorities in opposition to Defendants Kim Lisa Taylor's ("Taylor") and Syndication Attorneys, PLLC's (together with Taylor, "Defendants") Motion for Partial Summary Judgment, as follows.

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants' motion is based on two major fallacies: (1) Taylor is an innocent adopter of a descriptive term; and (2) the mark "Syndication Lawyers" is merely descriptive and will never acquire secondary meaning. Defendants are wrong on both counts.

First, the record shows that Taylor personally spent years working with Plaintiff to build Plaintiff's trademark "Syndication Lawyers" (the "Mark") as a brand. Far from asserting, as she does now, that it is a generic phrase denoting a type of law practice, Taylor testified that "Syndication Lawyers" is an original phrase coined by her husband. It was only after Taylor left her former firm, absconded with its domain names, and began using the confusingly similar "Syndication Attorneys" trade name that she first asserted the Mark was non-protectable. Taylor could easily have moved on and opened her new shop with a new domain name. She did not do this. On the contrary, Taylor adopted a confusingly similar website to Plaintiff's, "parked" Plaintiff's domain, and automatically diverted email traffic from plaintiff to Defendants' competing site.[1] These actions show willful intent, which is construed as deliberate infringement under applicable law.

Second, the question of whether the Mark is descriptive is moot. By placing

---

[1] Taylor's unauthorized taking of Plaintiff's domain constitutes conversion and is the subject of Plaintiff's concurrently filed motion for partial summary judgment.

the Mark on the PTO's Supplemental Register, Plaintiff reserved the right to show that the Mark can acquire or has acquired distinctiveness or secondary meaning. Because the question of whether a mark can acquire distinctiveness is a question of fact, it is not an appropriate basis for summary judgment.

Defendants' motion fails because Taylor is *not* an innocent infringer: her actions are construed under the law as an intention to deceive the public and constitute infringement under the Lanham Act. Defendants' motion also fails because it mistakenly focuses on whether the Mark is descriptive, which is not at issue. Rather, the issue before the Court is whether the Mark can acquire or has acquired distinctiveness or secondary meaning. This is a factual question that precludes summary judgment.

## II.    CHRONOLOGY OF EVENTS

1. Plaintiff is a law firm headquartered in Lake Forest, California that practices securities law. *See* Plaintiff's Statement of Genuine Issues of Material Facts and Additional Facts and Conclusions of Law ("Plaintiff's Facts") ¶ 1.

2. Plaintiff is the successor-in-interest, reverse chronologically, to Trowbridge, Taylor & Sidoti, LLP, Trowbridge & Taylor LLP, and Eugene Trowbridge, sole proprietorship. Plaintiff's Facts, ¶ 2.

3. Eugene Trowbridge ("Trowbridge"), sole proprietorship, was a law firm that practiced securities law. Plaintiff's Facts, ¶ 3.

4. On or about January 2008, Taylor began working for Trowbridge as a contract attorney. Plaintiff's Facts, ¶ 4.

5. During 2009, Trowbridge and Taylor discussed forming a partnership. Toward this end, on June 1, 2009, Taylor emailed Trowbridge, "'Syndicationlawyers.com' is available. I think it would be a nice website address for us and we can use it for emails also." Plaintiff's Facts, ¶ 5.

6. Taylor contends that she owns the domain name SyndicationLawyers.com because "my husband came up with the phrase 'Syndication Lawyer,' and SyndicationLawyers.com is just an extension of it, so I have always believed that that was mine." Plaintiff's Facts, ¶ 6.

7. On June 4, 2009, Taylor reserved the domain "Syndicationlawyers.com" for two years and advised Trowbridge "[i]t could be a good website name or good brand for us with respect to internet search engines, etc." Plaintiff's Facts, ¶ 7.

8. In September 2009, Trowbridge and Taylor formed Trowbridge & Taylor LLP ("T&T"). T&T began to operate as a partnership on January 1, 2010. Plaintiff's Facts, ¶ 8.

9. On April 16, 2010, Taylor emailed Trowbridge:

> I have secured the following website domains from Godaddy for our law firm:
>
> SyndicationLawyer.com
> SyndicationLawyers.com
> SyndicationAttorneys.com
> TrowbridgeAndTaylor.com
> TrowbridgeTaylor.com
> TrowbridgeTaylorLaw.com
> TrowbridgeAndTaylorLaw.com
> TrowbridgeAndTaylorLLP.com [collectively herein, the "Domain Names"]
>
> …I have set up a web hosting account for SyndicationLawyers.com, to which all other domains can be directed.

Plaintiff's Facts, ¶ 9.

10. Taylor testified that T&T paid for the Domain Names and a web hosting account "[b]ecause the firm was using those names." She had previously advised Trowbridge, in connection with her blog posts on the firm website, "our website address is 'SyndicationLawyers.com' and not Trowbridge and Taylor,

LLP," demonstrating her use of the Mark as the firm's brand and primary identifier. Plaintiff's Facts, ¶ 10.

11. Thereafter, SyndicationLawyers.com became the primary domain for T&T's website. A user linking to any of the other Domain Names would be automatically directed to the website identified by SyndicationLawyers.com. Plaintiff's Facts, ¶ 11.

12. Throughout her time at T&T, Taylor considered the domain SyndicationLawyers.com to be synonymous with T&T. Plaintiff's Facts, ¶ 12.

13. In or about January 2014, Jillian Sidoti ("Sidoti") joined the existing partners of T&T to form Trowbridge, Taylor & Sidoti LLP ("TTS") as successor-in-interest of T&T. From that time, TTS used SyndicationLawyers.com for its website. Plaintiff's Facts, ¶ 13.

14. On March 21, 2016, Taylor notified Trowbridge and Sidoti that she was withdrawing from TTS to form a new firm in Florida. In her withdrawal letter, Taylor proposed to cross-market her new firm with Trowbridge and Sidoti using the SyndicationLawyers.com domain name. Plaintiff's Facts, ¶ 14.

15. On March 23, 2016, Trowbridge wrote Taylor that he declined to work with her under a domain that incorporated the Mark. He advised Taylor that the domain SyndicationLawyers.com was solely owned by Plaintiff. Plaintiff's Facts, ¶ 15.

16. Despite Trowbridge's written notification that Plaintiff owned the Domain Names, Taylor unilaterally took down and "parked" TTS's website and stopped web hosting activity under the SyndicationLawyers.com domain name. Plaintiff's Facts, ¶ 16.

17. Taylor created a new website for Defendants at SyndicationAttorneys.com. Plaintiff's Facts, ¶ 17.

18. To date, Taylor has failed and refused to transfer the accounts and control of the Domain Names to Plaintiff, including its primary domain

SyndicationLawyers.com.  Plaintiff's Facts, ¶ 18.

19.   Despite Taylor's unauthorized activities, Plaintiff still maintains a strong presence under the Mark on the Internet.  For example, a user search of YouTube for "Syndication Lawyers" will prompt several video segments of Trowbridge discussing syndication law.[2]  Plaintiff's Facts, ¶ 19.

20.   In addition to use of the Mark through videos, Plaintiff has established secondary meaning for the Mark through its industry presence and reputation.  Plaintiff's Facts, ¶ 20.

21.   To date, Plaintiff has spent substantial time and money advertising its services under the Mark.  Plaintiff's Facts, ¶ 22.

22.   As Taylor previously admitted, SyndicationLawyers.com is used synonymously with Plaintiff's firm.  Plaintiff is associated in the real estate syndication industry with the Mark and enjoys significant goodwill attached to the Mark as a result of its industry events, online presence, publications, and several years' practice in this specialty area.  Plaintiff's Facts, ¶ 23.

### III.   ARGUMENT

#### A.   Defendants' Willful Conduct Establishes Infringement.

Courts have held that choosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013).  When the alleged infringer intends to deceive customers, it is inferred that its conscious attempt to confuse did in fact result in confusion.  *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004).  Replication of a mark

---

[2] One such video is a brief clip in which Trowbridge identifies Plaintiff's present website, "CrowdFundingLawyers.net."  This new moniker is *not* an indication of Plaintiff's abandonment of the Mark.  On the contrary, it is a stopgap measure necessitated by Defendants' conversion of the SyndicationLawyers.com domain name, which domain Plaintiff intends to resume using once it regains control.  Plaintiff's Facts, ¶ 21.  *See* Section III.D, *infra*.

using the owner's materials and unauthorized use on identical products indicate an intentional appropriation. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006). *See also AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) (a Court assumes that an intentional infringer "can accomplish his purpose: that is, that the public will be deceived"). Deceptive intent is "entitled to great weight" in the ultimate determination of likelihood of confusion. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998) (citation omitted).

These holdings are consistent with those of other jurisdictions: "Proof of intent to appropriate another's property may be comparable to an expression of opinion by an expert witness; a defendant who purposely chooses a particular mark because it is similar to that of a senior user is saying, in effect, that he thinks there is at least a possibility that he can divert some business from the senior user—and the defendant ought to know at least as much about the likelihood of confusion as the trier of fact." *Little Caesar Enters. v. Pizza Caesar, Inc.*, 834 F.2d 568, 572 (6th Cir. 1987); *see also Charles of the Ritz Grp. Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1322 (2nd Cir. 1987) ("evidence of intentional copying raises a presumption that the second comer intended to create a confusing similarity.")

An infringement suit based on a mark with secondary meaning requires an analysis of multiple factors, including consumer testimony, manner, and length of use of a mark, the amount of sales and advertising expended in connection with the mark, and proof of intentional copying by the defendant. *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088 (9th Cir. 2004).

In the present action, there is no dispute that Taylor not only intentionally adopted a confusingly similar domain name to Plaintiff's, but that *she has parked Plaintiff's domain incorporating the Mark and electronically diverted email directed to Plaintiff to Defendants*. Taylor's actions are, by any standard, willful and deliberate. By their conversion of the Domain Names and misuse of the Mark

to redirect email away from Plaintiff, Defendants are presumed to have intended to deceive the public. *Hokto Kinoko*, 738 F.3d at 1096; *Au-Tomotive Gold,* 457 F.3d at 1076. Based on this intention, it is inferred that Defendants' attempt to confuse did in fact result in confusion. *Playboy Enters.,* 354 F.3d at 1028; *Sleekcraft*, 599 F.2d at 354. Defendants' intentional conduct is also a factor indicating that the Mark has acquired secondary meaning. *See Grupo Gigante*, 391 F.3d 1088.

For the foregoing reasons, Defendants cannot depict themselves as innocent adopters of an allegedly descriptive term whose domain name coincidentally resembles the Mark for identical services. On the contrary, Taylor's prior testimony regarding her attempts to build the Mark as Plaintiff's brand over a period of years is inconsistent with Defendants' newly minted argument that the Mark is merely descriptive. The Ninth Circuit has described it as a basic rule of evidence that "prior inconsistent statements may be used to impeach a witness." *United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir. 1991) (quoting *United States v. McLaughlin*, 663 F.2d 949, 952 (9th Cir. 1981) and *United States v. Hale*, 422 U.S. 171, 176 (1975)). Further, "[a] prior inconsistent statement is admissible to raise the suggestion that if a witness makes inconsistent statements, then his entire testimony may not be credible; such an inference does not depend on whether either the prior statement or the subsequent in-court statement is true." *United States v. Bao*, 189 F.3d 860, 866 (9th Cir. 1999).

The record shows that Taylor actively used and developed the Mark as a brand "synonymous" with Plaintiff's predecessor firm, and absconded with it over Trowbridge's written objection. Pursuant to the above-discussed precedent, Taylor's conduct shows an intent to deceive, creates an inference of actual deception, and constitutes evidence that the Mark has acquired secondary meaning. Defendants' argument is inconsistent with Taylor's record testimony and casts doubt on Taylor's credibility. It also conflicts with common sense: *If the Mark*

*truly had no value as a source of origin, Taylor would not have bothered to steal the Domain Names in the first place.*

Plaintiff respectfully submits that Defendants' conduct as evidenced by the record and as measured by controlling precedent establishes secondary meaning for the Mark and an intentional infringement of plaintiff's rights under the Lanham Act.

### B. Plaintiff's Mark Can Acquire Distinctiveness.

Trademark Act, 15 U.S.C. §1052(f) permits the registration of a mark that is not inherently distinctive on the Principal Register upon proof that the mark has acquired distinctiveness in relation to the applicant's goods or services in commerce. Whether acquired distinctiveness has been established is a question of fact. *In re Loew's Theatres, Inc.*, 769 F.2d 764, 769-70 (Fed. Cir. 1985).

Acquired distinctiveness may be shown by direct and/or circumstantial evidence. Direct evidence includes actual testimony, declarations or surveys of consumers as to their state of mind. Circumstantial evidence is evidence from which consumer association might be inferred, such as years of use, extensive amount of sales and advertising, and any similar evidence showing wide exposure of the mark to consumers. There is no fixed rule for the amount of proof necessary to demonstrate acquired distinctiveness. *In re Ennco Display Systems Inc.*, 56 USPQ2d 1279 (TTAB 2000). In determining whether a proposed mark has acquired distinctiveness, the following factors are generally considered by the USPTO: (1) length and exclusivity of use of the mark in the United States by applicant; (2) the type, expense and amount of advertising of the mark in the United States; and (3) applicant's efforts in the United States to associate the mark with the source of the goods and/or services, such as unsolicited media coverage and consumer studies. All of these factors do not have to be considered, and no single factor is determinative. *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d

1420, 1424 (Fed. Cir. 2005).

The record shows that there is a genuine issue of fact as to whether the Mark has acquired secondary meaning in the minds of the consuming public. This factual issue is further complicated by Taylor's conduct, namely conversion of the domain, use of a confusingly similar mark, and acknowledging the Mark's secondary meaning. *See Grupo Gigante, supra*, 391 F.3d 1088. Defendants argue that a number of law firms provide syndication-related services. Moving Brief, p. 10. However, there is no dispute between any other law firm and Plaintiff concerning use of the Mark, or conversion of Plaintiff's property. Defendants' evidence that other firms use the phrase "syndication law" should be disregarded as irrelevant, or excluded as distracting and needlessly cumulative. Fed. R. Evid. 402, 403. *See also Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (when evidence is minimally relevant, it is likely to be minimally probative as well).

Defendants do *not* argue—or submit any evidence—that consumers associate any firm but Plaintiff with the Mark, or any competing mark. By contrast, Plaintiff has provided evidence that the Mark specifically denotes its services and that the relevant public associates the Mark with Plaintiff as a result of its prolonged use, industry reputation and Internet presence. Plaintiff's Facts, ¶¶ 19-20, 22-23. In any event, because the issue of acquired distinctiveness depends on resolution of this factual question, summary judgment is inappropriate. *In re Loew's Theatres*, 769 F.2d at 769-70. Defendants' motion should be denied accordingly.

**C.   Registration on the Supplemental Register Is Not Determinative.**

Registration on the Supplemental Register does *not* constitute an admission of a lack of acquired distinctiveness. 15 U.S.C. §1095. TMEP § 815.03. As stated

in Exhibit A to Defendants' Brief (USPTO Office Action) at page 9: "If applicant cannot submit additional evidence to support the claim of acquired distinctiveness, applicant may respond to the refusal by arguing in support of registration and/or amending the application to seek registration on the Supplemental Register. *See* 15 U.S.C. §1091(a); 37 C.F.R. § §2.47, 2.75(a); TMEP §§ 801.02(b), 816. *If applicant amends the application to the Supplemental Register, applicant is not precluded from submitting evidence and arguments against this refusal.* TMEP § 816.04." (Emphasis added.)

In other words, by listing the Mark on the Supplemental Register, Plaintiff reserved the right and ability to prove secondary meaning at a later date. (Registration on the Supplemental Register also prevents third parties from registering and using similar marks for similar goods or services.)  Plaintiff's decision to list the Mark on the Supplemental Register is merely an acknowledgement that the mark is not inherently distinctive.  It is *not* an admission that the Mark cannot acquire secondary meaning.

Defendants assert that Plaintiff cannot show secondary meaning because it "has not disclosed any direct consumer testimony and survey evidence," and because "no jury could conclude that consumers exclusively associate the term 'Syndication Lawyers' with Plaintiff."  Moving Brief, p. 13. This is not legal argument; it is an editorial comment as to the purported weight of evidence. Defendants' self-serving opinion of what consumers would or would not conclude only serves to illustrate the material question of fact raised by their motion, thereby precluding summary judgment.  In addition, Defendants' unsupported conclusions conflict with Taylor's previous statements regarding use of the Mark as a brand. And, as noted above, if the Mark truly had no goodwill attached to it there would not have been any reason for Taylor to steal it and its associated domain. Defendants' motion should be denied.

### D. **Plaintiff Did Not Abandon Its Trademark.**

Defendants argue that Plaintiff cannot assert that the Mark has acquired secondary meaning because "Plaintiff has admitted that it no longer uses SyndicationLawyers.com composite design mark on its website or its marketing materials" and "also no longer uses the domain name SyndicationLawyers.com for its website." Moving Brief, p. 13. In short, Defendants argue that Plaintiff abandoned the Mark. This is patently false. The concept of abandonment concerns *intentional disuse* of intellectual property rights. Under 15 U.S.C. § 1127, a trademark is abandoned "when its use has been discontinued with intent not to resume such use." The undisputed facts show that Taylor unilaterally cut off Plaintiff's access to the GoDaddy accounts controlling the Domain Names. In other words, it was *Taylor's* intent that Plaintiff discontinue use of the Domain Names, not Plaintiff's intent. In fact, plaintiff has every intention of resuming use of the Mark, when it recovers its domain. Plaintiff's Facts, ¶ 21.

A trademark may be presumed abandoned if not used for a three-year period. A trademark owner may overcome the presumption of abandonment by demonstrating that the mark was used during the three-year period or that they intended to resume use within the reasonably foreseeable future. *See Silverman v. CBS Inc.*, 870 F.2d 40, 9 USPQ2d 1778 (2nd Cir. 1989). In the present case, Plaintiff demonstrated its intent to resume use of the Domain Name by filing a lawsuit to get it back. Until it is able to do so, Plaintiff uses the brand "Crowd Funding Lawyers" and the domain name "crowdfundinglawyers.net". This alternative designator is employed as a matter of necessity due to Defendants' conversion of Plaintiff's domain names. It is not an admission of abandonment or presumptive of an intent not to resume use of the Mark. When Plaintiff is able to regain control of its domain name, use of the Mark will resume. Plaintiff's Facts, ¶

21.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for partial summary judgment in its entirety.

Respectfully submitted,

Dated: August 7, 2017                     MANDOUR & ASSOCIATES, APC


    /s/ Ben T. Lila
Ben T. Lila (SBN 246808)
Email: blila@mandourlaw.com
Attorneys for plaintiff and
counterclaim defendant,
TROWBRIDGE SIDOTI LLP

# CERTIFICATE OF SERVICE

I hereby certify that on the below date, I filed the foregoing document via the Court's CM/ECF Filing System, which will serve electronic notice of the same on the following:

Robert Peter Weiss
NARVID SCOTT LLP
15165 Ventura Boulevard, Suite 315
Encino, CA 91403
Telephone: (818) 907-8986
Facsimile: (818) 907-9896
Email: rweiss@narvidscott.com

Craig A Gelfound
ARENT FOX LLP
555 West Fifth Street 48th Floor
Los Angeles, CA 90013
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
Email: gelfound.craig@arentfox.com

Attorneys for Defendants,
KIM LISA TAYLOR and
SYNDICATION ATTORNEYS PLLC

Dated: August 7, 2017                    /s/ Ben T. Lila
                                         Ben T. Lila
                                         Email: blila@mandourlaw.com