MANDOUR & ASSOCIATES, APC
JOSEPH A. MANDOUR, III (SBN 188896)
Email: jmandour@mandourlaw.com
BEN T. LILA (SBN 246808)
Email: blila@mandourlaw.com
8605 Santa Monica Blvd., Suite 1500
Los Angeles, CA 90069
Telephone: (858) 487-9300
Facsimile: (858) 487-9390

Attorneys for plaintiff,
TROWBRIDGE SIDOTI LLP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROWBRIDGE SIDOTI LLP, a California Limited Liability Partnership,<br><br>Plaintiffs,<br><br>v.<br><br>KIM LISA TAYLOR, an individual; and SYNDICATION ATTORNEYS, PLLC, a Florida Professional Limited Liability Company,<br><br>Defendants.<br><br>KIM LISA TAYLOR and SYNDICATION ATTORNEYS PLLC, a Florida Professional Limited Liability Company,<br><br>Counterclaimants,<br><br>v.<br><br>TROWBRIDGE SIDOTI LLP, a California Limited Liability Partnership,<br><br>Counterclaim Defendant. | Case No. 8:16-cv-00771-ODW-SK<br><br>**PLAINTIFF TROWBRIDGE SIDOTI LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date: August 28, 2017<br>Time: 1:30 pm<br>Courtroom: 5D<br>Judge: Hon. Otis D. Wright II |

## TABLE OF CONTENTS

I. SUMMARY OF REPLY ..................................................................................1

II. ARGUMENT ....................................................................................................2

   A. Taylor's Factual Chronology Is Refuted By The Record Evidence. ...............2

   B. Taylor's Self-Serving Declaration is Inadmissible. ..........................................4

   C. Taylor May Not Rely on a "Sham" Declaration. .............................................5

   D. Taylor's Version of Events Is Implausible. .....................................................6

   E. Plaintiff Was Damaged by Defendants' Conversion. ......................................8

   F. Plaintiff Is the Successor in Interest To T&T, Which Owns The Domain Name. ..................................................................................................................8

III. CONCLUSION ..............................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*F.T.C. v. Publ'g Clearing House, Inc.*,
　104 F.3d 1168, 1171 (9th Cir. 1997) ...................................................................4, 5

*In re Chavin*,
　150 F.3d 726 (7th Cir. 1998).....................................................................................7

*In re Fair Oaks Ltd.*,
　168 B.R. 397 (9th Cir. BAP1994)..........................................................................3, 9

*Kennedy v. Allied Mut. Ins. Co.*,
　952 F.2d 262 (9th Cir. 1991).....................................................................................5

*Moreno v. Greenwood Auto Center*,
　91 Cal.App.4th 201 (2001). ......................................................................................8

*Nelson v. City of Davis*,
　571 F.3d 924 (2009)..............................................................................................5, 6

*Nigro v. Sears, Roebuck and Co.*,
　784 F.3d 495 (2015)..............................................................................................4, 5

*Ray v. Alad Corp.*,
　19 Cal. 22 (1977).....................................................................................................10

*Stull v. Fox,*
　2010 WL 3895538 (C.D. of Cal. October 4, 2010) ..................................................3

*United States v. Oil Resources, Inc.*,
　817 F.2d 1429 (9th Cir. 1987).................................................................................10

**Statutes**

Cal. Civ.Code § 3336..........................................................................................................8

Cal. Corp. Code § 16204(c) ............................................................................................3, 9

Civil Case No. 8:16-cv-00771-ODW-SK
PLAINTIFF TROWBRIDGE SIDOTI LLP'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
-3-

Plaintiff Trowbridge Sidoti LLP ("Plaintiff") submits its reply memorandum of points and authorities in support of its Motion for Partial Summary Judgment or, alternatively, for Partial Summary Adjudication and an Order Specifying Facts that Appear Without Substantial Controversy against Defendants Kim Lisa Taylor ("Taylor") and Syndication Attorneys, PLLC (together with Taylor, "Defendants"), as follows.

## I.   SUMMARY OF REPLY

Plaintiff acquired "SyndicationLawyers.com" (the "Domain Name"), among other domain names, which it used as its primary Internet address. The Domain Name was originally obtained for Plaintiff's predecessor firm, Trowbridge & Taylor ("T&T"), in which Taylor was a partner. After she split with Plaintiff, Taylor asserted that she had obtained the Domain Name for herself and simply licensed it to Plaintiff. Taylor now claims she always owned the Domain Name exclusively, and therefore that she could not have converted it. As shown below, this revisionist narrative is unavailing.

The record is replete with documentary evidence establishing that the parties always intended the Domain Name to be Plaintiff's firm property. The "facts" Taylor offers to support her account of events are inadmissible because they are conclusory, are refuted by documentary evidence, are impeached by Taylor's own prior statements, or are simply too implausible to be credited. Lastly, Plaintiff has established not only that the Domain Name was converted but that, as a matter of law, it sustained damages resulting from the conversion.

Defendants' opposition is based on unsupported conclusions, inadmissible and demonstrably false evidence, and it defies common sense. It raises no triable issue of fact and confirms that Plaintiff's motion should be granted.

\\

\\

II. **ARGUMENT**

    A.    **Taylor's Factual Chronology Is Refuted By The Record Evidence.**

It is important to follow the exact sequence of events to understand the intentions of the parties regarding the Domain Name.

    SUF ¶9./Taylor Depo., Exh. 3.    REDACTED

    SUF ¶5.  [Exh. 6] (emphasis added.)

REDACTED

*Id.*

Taylor ignores these communications, claiming she registered the Domain Name for herself since she "had merely engaged in preliminary discussions about the possibility of forming a partnership" at that time. *See* Declaration of Kim Taylor in Opposition to Summary Judgment ("Taylor Decl."), ¶¶ 6, 8.  However, the email chain described above shows that, prior to her reserving the Domain Name, Taylor and Trowbridge discussed it specifically in connection with their intended partnership.  The phrases "for us," and "we can use it," and the agreement to "set it aside for our website" show that the Domain Name was only discussed in connection with the future law firm.

In fact, the parties formed T&T in due course, officially registering the firm with the Secretary of State in September 2009.  SUF ¶9. [Exh. 4]  T&T began to operate as a partnership on January 1, 2010.  SUF ¶10.  [KT Depo. 29]

1   On April 16, 2010, Taylor registered several more domains consisting of combinations of the two partners' last names (TrowbridgeAndTaylor.com, TrowbridgeTaylor.com, TrowbridgeTaylorLaw.com, TrowbridgeAndTaylorLaw.com, and TrowbridgeAndTaylorLLP.com).  In keeping with their previous communications,

REDACTED

SUF ¶11. [Exh. 5]
SUF ¶13./Taylor Depo., Exh. 10.  T&T did not begin to use Syndicationlawyers.com as its primary domain name until after the partnership was formed and began operating.  SUF ¶16.

The record shows that the parties always intended to obtain the Domain Name for T&T.  Taylor's reliance on statements to the contrary is contradicted by controlling law: "Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership."  Cal. Corp. Code § 16204(c). *See also In re Fair Oaks Ltd.*, 168 B.R. 397, 402 (9th Cir. BAP1994).  Moreover, "[p]artnership property also does not need to be purchased with partnership funds but rather partnership property is determined by the understanding and intention of the partners." *Stull v. Fox*, 2010 WL 3895538, *8 (C.D. of Cal. October 4, 2010).  This statute and precedent was referenced in Plaintiff's moving brief because it is exactly on point.  Regardless of who initially paid for the Domain Name, the record shows it was obviously intended to be partnership property.

SUF ¶13./Taylor Depo., Exh. 10. Defendants do not refute—*or even mention*—this authority or precedent in their opposition brief. Consequently, there is no issue of fact as to its application, or to the accuracy of Plaintiff's summary of the evidence.

### B. Taylor's Self-Serving Declaration is Inadmissible.

As a general rule, a District Court will not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: the Court can disregard a declaration that states only conclusions and not facts that would be admissible evidence. *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (2015); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

After she was sued, Taylor asserted for the first time that she had never transferred ownership of the Domain Name to T&T [Taylor Decl., ¶ 6], despite the abundance of written communications establishing that she purchased it specifically for the firm. Similarly, Taylor now contends that she always considered herself to be the sole owner of all the other domain names T&T paid for, even though most of them are combinations of her and Trowbridge's last names. Taylor Decl., ¶ 13. She also claims she had no discussions indicating that she was acting as an agent in obtaining the domain names "on behalf of the contemplated partnership," despite the fact that T&T was not being "contemplated", but had been operating for four months when she registered them. *Id*. Taylor asserts that when she paid the webhosting and the renewal fees of the Domain Name with a T&T debit card she "understood these payments to be a licensing fee for TT's use of SyndicationLawyers.com, which I continued to own in my name." *Id.*, ¶ 16.

Taylor's beliefs about the disposition of the domain names do not controvert the clear language of her written communications with Trowbridge. This is particularly true in that Taylor never expressed her supposed beliefs regarding an alleged license, either orally or in writing, until after she was sued. She avers that she only licensed the domain names to the firm, but does not support this legal conclusion with any evidence.  The complete absence of evidence supporting Taylor's self-serving declaration prompts the Court to disregard it.  No genuine issues of material fact are raised by her wholly gratuitous document.  *Nigro v. Sears,* 784 F.3d at 497; *F.T.C. v. Publ'g Clearing House, Inc.,* 104 F.3d at 1171.

### C. Taylor May Not Rely on a "Sham" Declaration.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Nelson v. City of Davis*, 571 F.3d 924, 927 (2009) (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).

In opposition to the instant motion Taylor declared: "my intent was to purchase the domain name to own and hold in my name. I anticipated that I would use the domain name for my own business or license it to a potential future partnership with Mr. Trowbridge." Taylor Decl., ¶ 8.  This statement is belied by Taylor's deposition testimony:

> Q:  Do you believe there were any licenses between yourself and Trowbridge & Taylor?
> A:  No.
> Q:  Do you believe there are any licenses between yourself and Trowbridge, Taylor & Sidoti?
> A:  No.
>
> Declaration of Ben T. Lila in Support of Reply, ("Lila Decl.") Exhibit A, Taylor Depo., Vol. I, pp. 69-70.

Taylor's opposition depends on her purported "license" of the Domain Name to Plaintiff, as described in her declaration. However, as she expressly testified under oath, *there were no licenses between the parties*. This is because, as shown above, the clear intent of the parties was for the Domain Name to be firm property. In short, Taylor submitted a "sham" declaration designed to create an issue of fact where none exists. This is impermissible as a matter of law and the Court should disregard any and all statements in Taylor's declaration that conflict with her deposition testimony. *Nelson v. City of Davis*, 571 F.3d at 927.

### D. Taylor's Version of Events Is Implausible.

It is undisputed that Taylor and Trowbridge first discussed and then agreed to reserve the Domain Name for the firm they would shortly form. SUF ¶7. It is also undisputed that both partners invariably referred to the Domain Name and other domains as firm assets. SUF ¶11. It is further undisputed that the Domain Name was not used until well after T&T was formed and operating. SUF ¶9. It is undisputed that registration, webhosting and renewal of all the subject domain names were paid for by T&T. Lastly, it was undisputed that Taylor did not use the Domain Name for her new firm because she was not sure what Plaintiff was going to do with it. Lila Decl. Exhibit A, Taylor Depo., Vol. II, p. 187. Taylor's claim that she always considered the Domain Name her personal property is simply implausible.

The record is filled with evidence contradicting Taylor's new version of events. Why the consistent references to

REDACTED

SUF ¶5.  [Exh. 6]

SUF ¶18. Why, over a year and a half after T&T was formed,

SUF ¶17.        REDACTED

SUF ¶18.

It is undisputed that Taylor had already registered the domain "Syndicationlawyer.com" in the singular for herself when she was a sole practitioner. SUF ¶7. Why would she need to also register the plural "Syndicationlawyers.com" if not intended for her partnership with Trowbridge, as indicated in the parties' correspondence?

Taylor testified that when she formed her new firm in Florida she called it "Syndication Attorneys" because:

> "I didn't know what [Trowbridge and Sidoti] were going to do with Syndication Lawyers and if…we were going to work something out where they would continue to use it or I would get it. I didn't know what was going to happen with it, so I wanted to start something that was not the same."

Lila Decl. Exhibit A, Taylor Depo., Vol. II, p. 187.

If Taylor believed she owned the Domain Name outright why did she care what Plaintiff wanted to do with it? How could Plaintiff have used it without her permission? Taylor's admission that she "didn't know what was going to happen" with the Domain Name has only one meaning: she knew it was the firm's property, not her own, and accordingly made alternative plans using a different domain.

Where a litigant's story is "utterly implausible" a Judge need not defer to the trier of fact to resolve the credibility issue. *See In re Chavin*, 150 F.3d 726, 728-729 (7th Cir. 1998). Taylor's story, which she to herself for the five-year period prior to and during her partnerships with Trowbridge and Sidoti, is an

exceptional example of an utterly implausible narrative that creates no issue of fact.

### E. **Plaintiff Was Damaged by Defendants' Conversion.**

Defendants argue that Plaintiff has not met its burden of showing damages resulting from their conversion of the Domain Name. Opp. Brief, p. 14. They are mistaken. Under controlling law, the detriment caused by the wrongful conversion of personal property is *presumed* to include a "fair compensation for the time and money properly expended in pursuit of the property." Cal. Civ. Code § 3336; *accord Moreno v. Greenwood Auto Center*, 91 Cal.App.4th 201, 209 (2001). As a result of Defendants' conversion Plaintiff was compelled to file and prosecute the instant lawsuit in pursuit of recovering their Domain Name, thereby sustaining damages as provided by statute.

Moreover, the domains were renewed with firm funds for a set period of time that has not expired. By preventing Plaintiff's use of the domains, Defendants have damaged Plaintiff for the percentage of the renewal period that is now unusable. Plaintiff has clearly been damaged by Defendants' conversion.

### F. **Plaintiff Is the Successor in Interest To T&T, Which Owns The Domain Name.**

Defendants assert that Taylor became the owner of the Domain Name because she is its registrant. Opp. Brief, p. 7. While she is listed as the registrant, the detailed communications discussed above confirm that Taylor registered the Domain Name for and on behalf of T&T, which she intended to form and did form with Trowbridge. SUF ¶¶5-11. As previously stated, Taylor never used the Domain Name herself; it was first used months after T&T began operating. SUF ¶¶10-11. Under these circumstances, the fact that Taylor registered the various firm domains is irrelevant. [Taylor's independent contractor agreement stating she was not an agent of Trowbridge is similarly irrelevant.] The record evidence

shows that the parties always intended that the domains were to be partnership property even though they were registered before T&T was officially formed. Cal. Corp. Code § 16204(c); *In re Fair Oaks Ltd.*, 168 B.R. at 402.

Defendants also argue that TTS's partnership agreement demonstrates that the parties had no intent to transfer ownership of the Domain Names from T&T or Taylor, citing the following provision of that agreement:

> All real and personal property of the partnership shall be owned by the Partnership as an entity. No Partner shall have any ownership interest in the Partnership Property in his or her own individual name or right.

Opp. Brief, p. 13.

The above paragraph does not show that Taylor complied with the partnership agreement; it shows that *she violated it* by absconding with partnership property.

Lastly, Defendants argue that Plaintiff is not actually the successor-in-interest to T&T, and so could not have acquired its assets including the Domain Name. Opp. Brief, p. 12. This unsubstantiated concept has no bearing on the issues presented in the instant motion. In fact, Plaintiff succeeded TT&S, which succeeded T&T, which succeeded Trowbridge's sole proprietorship. Each incarnation of the firm was simply a continuation of Trowbridge's original firm. The practice areas, client base, offices, and paralegal staff have remained unchanged. Defendants offer no evidence or authority whatsoever for their argument that each incarnation of the law firms in which Trowbridge was or is principal are not successors-in-interest. The Court should disregard this makeweight argument out of hand.

Courts generally consider five factors when determining whether a transaction cast as an assets sale or other corporate combination results in a *de facto* merger. *United States v. Oil Resources, Inc.*, 817 F.2d 1429, 1434 n.6 (9th

Cir. 1987). The factors are:

> 1. whether the consideration paid for the assets was solely stock of the purchaser or its parent;
> 2. whether the purchaser continued the same enterprise after the sale;
> 3. whether the shareholders of the seller became shareholders of the purchaser;
> 4. whether the seller liquidated;
> 5. whether the buyer assumed the liabilities necessary to carry on the business of the seller.
>
> *Id.*

The policy behind the de facto merger doctrine is that a corporation should not be allowed to avoid liability by simply changing its name and/or structure. The mere continuation exception requires a finding of one or both of the following elements: (1) no adequate consideration was given to the predecessor for its assets and thereafter made available for meeting the claims of unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations. *Ray v. Alad Corp.*, 19 Cal. 22, 29 (1977). Both elements are present here. Trowbridge remained the principal – continuing the same business, assuming the same liabilities, with the same client base with the same staff and from the same offices—Plaintiff is simply a continuation of the firm he started as a sole practitioner.

\\
\\
\\
\\
\\
\\
\\

### III. CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment in Plaintiff's favor and against Defendants or, alternatively, find summary adjudication of the above facts and issues and enter an order specifying matters that appear to be without substantial controversy such that those facts and issues are deemed established for purposes of trial.

Respectfully submitted,

Dated: August 14, 2017　　　MANDOUR & ASSOCIATES, APC

　　　/s/ Ben T. Lila
Ben T. Lila (SBN 246808)
Email: blila@mandourlaw.com
Attorneys for plaintiff and counterclaim defendant,
TROWBRIDGE SIDOTI LLP

# **CERTIFICATE OF SERVICE**

I hereby certify that on the below date, I filed the foregoing document via the Court's CM/ECF Filing System, which will serve electronic notice of the same on the following:

Robert Peter Weiss
NARVID SCOTT LLP
15165 Ventura Boulevard, Suite 315
Encino, CA 91403
Telephone: (818) 907-8986
Facsimile: (818) 907-9896
Email: rweiss@narvidscott.com

Craig A Gelfound
ARENT FOX LLP
555 West Fifth Street 48th Floor
Los Angeles, CA 90013
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
Email: gelfound.craig@arentfox.com

Attorneys for Defendants,
KIM LISA TAYLOR and
SYNDICATION ATTORNEYS PLLC

Dated: August 14, 2017           /s/ Ben T. Lila
                                 Ben T. Lila
                                 Email: blila@mandourlaw.com