MANDOUR & ASSOCIATES, APC
JOSEPH A. MANDOUR, III (SBN 188896)
Email: jmandour@mandourlaw.com
BEN T. LILA (SBN 246808)
Email: blila@mandourlaw.com
8605 Santa Monica Blvd., Suite 1500
Los Angeles, CA 90069
Telephone: (858) 487-9300
Facsimile: (858) 487-9390
Attorneys for plaintiff,
TROWBRIDGE SIDOTI LLP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROWBRIDGE SIDOTI LLP, a California Limited Liability Partnership,<br><br>        Plaintiffs,<br><br>        v.<br><br>KIM LISA TAYLOR, an individual; and SYNDICATION ATTORNEYS, PLLC, a Florida Professional Limited Liability Company,<br><br>        Defendants. | Case No. 8:16-cv-00771-ODW-SK<br><br>**PLAINTIFF'S TRIAL BRIEF** |
| KIM LISA TAYLOR and SYNDICATION ATTORNEYS, PLLC, a Florida Professional Limited Liability Company,<br><br>        Counterclaimants,<br><br>        v.<br><br>TROWBRIDGE SIDOTI LLP, a California Limited Liability Partnership,<br><br>        Counterclaim Defendant. | |

1
2
# **TABLE OF CONTENTS**

3  I.    INTRODUCTION AND SUMMARY OF ARGUMENT..................................1

4  II.   CHRONOLOGY OF EVENTS............................................................1

5  III.  ARGUMENT............................................................................5

6       A.  The Primary Domain Name Was Reserved on behalf of Plaintiff's

7  Predecessor. ......................................................................................5

8       B.  The Domain Names Were Purchased for and Owned By Plaintiff or

9  Plaintiff's Predecessor. ......................................................................6

10      C.  Plaintiff Acquired the Domain Names From its Predecessor Firm.................8

11      D.  Taylor Converted the Domain Names.........................................9

12 IV.   CONCLUSION ......................................................................10

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Civil Case No. 8:16-cv-00771
PLAINTIFF'S TRIAL BRIEF

# TABLE OF AUTHORITIES

**Cases**

*Burlesci v. Petersen*,
    68 Cal.App.4th 1062 (1998) .......................................................... 9, 10

*Plummer v. Day/Eisenberg, LLP*,
    184 Cal.App.4th 38 (2010) ................................................................ 9

*Shopoff & Cavallo LLP v. Hyon*
    (2008) 167 Cal.App.4th 1489 ............................................................ 9

*United States ex rel. Oliver v. Parsons Co.*,
    195 F.3d 457 (9th Cir. 1999) ......................................................... 6, 8

**Statutes**

Cal. Civ. Code § 1550 .......................................................................... 6

Cal. Civ. Code 3336 ........................................................................... 10

Cal. Corp. Code. §16204(c). ............................................................. 6, 8

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Local Rule 16, and this Court's Order, plaintiff TROWBRIDGE SIDOTI LLP hereby submits its Trial Brief:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The undisputed evidence shows that Plaintiff and its predecessors acquired several domain names and continuously operated a website using those domains until access to those domains and their registration account was taken down by Defendant Kim Lisa Taylor ("Taylor") (and then used by defendant Syndication Attorneys PLLC) unilaterally and without Plaintiff's prior knowledge or authorization.  Accordingly, plaintiff should prevail at trial on its claim for conversion.

## II.    CHRONOLOGY OF EVENTS

1.    Plaintiff is a law firm headquartered in Lake Forest, California that practices securities law.  [Trowbridge testimony.]

2.    Plaintiff is the successor-in-interest, reverse chronologically, to Trowbridge, Taylor & Sidoti, LLP, Trowbridge & Taylor LLP, and Eugene Trowbridge, sole proprietorship.  [Trowbridge testimony.]

3.    Eugene Trowbridge ("Trowbridge"), sole proprietorship, was a law firm that practiced securities law.  [Trowbridge testimony.]

4.    On or about January 2008, defendant Taylor began working for Trowbridge as a contract attorney.  [KT Depo: 21, Exh. 2]

5.    During 2009, Trowbridge and Taylor discussed forming a partnership.  Toward this end, on June 1, 2009, Taylor emailed Trowbridge, "'Syndicationlawyers.com' is available.  I think it would be a nice website address for *us* and *we* can use it for emails also."  [Exh. 6] (emphasis added.)

6.    On June 4, 2009, Trowbridge replied, "I think *we* should get the

Civil Case No. 8:16-cv-00771
PLAINTIFF'S TRIAL BRIEF

domain and set it aside for *our* website.  For sure, one of us or the firm can use it." [Exh. 6] (emphasis added.)  That same day, Taylor replied, "I have reserved the domain 'Syndicationlawyers.com' for two years.  It could be a good website name or good brand *for us* with respect to internet search engines, etc."  [Exh. 6] (emphasis added.)

7.     Taylor submitted the receipt for the cost of reserving the Syndicationlawyers.com domain name to Trowbridge, who reimbursed her for the cost.  [Godaddy receipt/Trowbridge testimony and QuickBooks report.]

8.     In September 2009, Trowbridge and Taylor formed Trowbridge & Taylor LLP ("T&T").  [Exh. 4]  T&T began to operate as a partnership on January 1, 2010.  [KT Depo. 29]

9.     On April 16, 2010, Taylor emailed Trowbridge:

 I have secured the following website domains from Godaddy for our law firm:

SyndicationLawyer.com

SyndicationLawyers.com

SyndicationAttorneys.com

TrowbridgeAndTaylor.com

TrowbridgeTaylor.com

TrowbridgeTaylorLaw.com

TrowbridgeAndTaylorLaw.com

TrowbridgeAndTaylorLLP.com

…I have set up a web hosting account for SyndicationLawyers.com, to which all other domains can be directed.

[Exh. 5]

10.     Taylor signed her April 16, 2010 email message "Kim Lisa Taylor,

Esq., TROWBRIDGE & TAYLOR LLP".  [Exh. 5]

11.     Taylor billed T&T for her time registering these domains.  [Taylor timecard, Exhibit 80.]

12.     Taylor paid for the Domain Names and web hosting account with a T&T firm debit card given to her by Trowbridge.  [Exh. 10]

13.     Taylor explained that T&T paid for the Domain Names and a web hosting account "[b]ecause the firm was using those names."  [KLT:92-93]  She had previously advised Trowbridge, in connection with her blog posts on the firm website, "our website address is 'SyndicationLawyers.com' and not Trowbridge and Taylor, LLP."  [Exh. 12]

14.     Thereafter, SyndicationLawyers.com became the primary domain for T&T's website.  A user linking to any of the other Domain Names would be automatically directed to the website identified by SyndicationLawyers.com.  [Exh. 5]

15.     On August 30, 2011, Taylor emailed Trowbridge a "list of domains *we* currently have at GoDaddy.com," including SyndicationLawyers.com as the firm's "primary email and website domain."  [Exh. 46] (emphasis added.)  Taylor further advised: "I have all our stuff on auto-renew with the Company Credit card so it should never expire or get transferred."  [Exh. 46]

16.     T&T paid for website development and maintenance, as well as renewal of the Domain Names.  [KLT:53]

17.     Throughout her time at T&T, Taylor continuously referred to the Domain Names as firm assets, and continued to pay fees associated with them with firm funds.  For example, on March 6, 2013, Taylor notified Trowbridge: "Updated a bunch of our domains and charged the registered address to your PO Box at GoDaddy…Used T&T Debit card."  [Exh. 24]  In reference to a June 2013 business meeting memorandum, Taylor acknowledged that SyndicationLawyers.com was used synonymously with T&T.  [KLT:139/Exh. 20]

Civil Case No. 8:16-cv-00771
PLAINTIFF'S TRIAL BRIEF

18.    In or about January 2014, Jillian Sidoti ("Sidoti") joined the existing partners of T&T to form Trowbridge, Taylor & Sidoti LLP ("TTS") as successor-in-interest of T&T.  [Trowbridge and Sidoti testimony and Exhibit 9.]

19.    Trowbridge, Taylor and Sidoti each executed a new partnership agreement for TTS dated January 1, 2014, which specified in part:

> All real and personal property of the partnership shall be owned by the Partnership as an entity.  No Partner shall have any ownership interest in the Partnership Property in his or her own individual name or right.
>
> [Exh. 9]

20.    Beginning in January 2014, TTS used SyndicationLawyers.com for its website.  [Trowbridge testimony.]

21.    The following domains were acquired and used by TTS with TTS funds:

Regaattorney.com

Reg-A.com

Regulation-a.com

Regulationas.com

Privatemoneylaw.com

Thesyndicationattorneys.com

[Taylor and Ivey testimony and GoDaddy receipts.]

22.    On March 21, 2016, Taylor notified Trowbridge and Sidoti that she was withdrawing from TTS to form a new firm in Florida.  [Exh. 26]  In her withdrawal letter, Taylor proposed to cross-market her new firm with Trowbridge and Sidoti using the SyndicationLawyers.com domain name.  [Exh. 26]

23.    On March 23, 2016, Trowbridge advised Taylor that SyndicationLawyers.com was owned by Plaintiff.  [Exh. 27]  Specifically,

Trowbridge wrote Taylor that she had registered that domain name as an agent for Plaintiff's predecessor, T&T, and that after T&T's dissolution Plaintiff had continued to pay for and use it.  [Exh. 27]

24.     Despite Trowbridge's written notification that Plaintiff owned the Domain Names, Taylor unilaterally took down TTS's website and stopped web hosting activity under the SyndicationLawyers.com domain name.  [KLT:175] Taylor also discontinued emails directed to addresses identified by that domain name.  [KLT:176]

25.     Taylor testified that she believes she owns the domain name SyndicationLawyers.com because "my husband came up with the phrase 'Syndication Lawyer,' and SyndicationLawyers.com is just an extension of it, so I have always believed that that was mine." [KLT: 159]

26.     Taylor eventually turned Plaintiff's email addresses back on. [KLT:179] However, to date, Taylor has failed and refused to transfer the accounts and control of the Domain Names to Plaintiff, including its primary domain SyndicationLawyers.com. [Trowbridge and Sidoti testimony.]

### III.   ARGUMENT

Plaintiff contends that it owns the Domain Names, did not abandon them, and that Taylor unlawfully converted them.  As shown below, even drawing all reasonable inferences from the undisputed facts in Taylor's favor, the record evidence establishes that Plaintiff, not Taylor, has continuously owned the Domain Names from the start, and Taylor's conversion of them was unjustified.

### A.      The Primary Domain Name Was Reserved on behalf of Plaintiff's Predecessor.

All of the evidence in this case establishes that Taylor first proposed reserving SyndicationLawyers.com for, and in connection with, her intended

Civil Case No. 8:16-cv-00771
PLAINTIFF'S TRIAL BRIEF

partnership with Trowbridge.  She suggested to Trowbridge that the domain "would be a nice website address *for us*."  Trowbridge agreed: "I think we should get the domain and set it aside *for our website*." Accordingly, Taylor reserved the domain Syndicationlawyers.com, affirming Trowbridge's opinion and her earlier statement that it "could be a good website name or good brand *for us*."  After Taylor reserved the domain name, Trowbridge reimbursed her for the cost.  The domain registrations have always been renewed with partnership funds.  The domain Syndicationlawyers.com was not used until after the partnership was formed and began operating.  California law presumes that these domains are owned by the partnership.  Cal. Corp. Code. §16204(c).

No interpretation of these undisputed facts could lead to any other conclusion.  Namely, the parties always intended that the domain name SyndicationLawyers.com was obtained for and on behalf of their intended partnership.

These facts show that T&T obtained the domain name by virtue of a simple sale contract.  Under applicable law, the basic elements for a contract are (1) parties capable of contracting, (2) their consent, (3) a lawful object and (4) sufficient consideration.  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (*citing* Cal. Civ. Code § 1550).   Here, the contracting parties were GoDaddy on the one hand and Trowbridge on the other, both of who were capable of entering into and consenting to the lawful sale contract for specified and reasonable consideration.  No contrary evidence exists suggests that Taylor reserved the domain name for herself.   The undisputed facts show that Taylor acted as an authorized agent on behalf of Trowbridge in the transaction, which was carried out in the interests of her and Trowbridge's intended partnership.

## B. <u>The Domain Names Were Purchased for and Owned By Plaintiff or Plaintiff's Predecessor.</u>

The evidence that the Domain Names were purchased for and owned by

T&T and TTS is incontrovertible:

- In April 2016, four months after T&T began operating, Taylor secured all of the Domain Names "*for our law firm*,"
- Taylor set up a web hosting account so that all the Domain Names would be directed to SyndicationLawyers.com.
- Taylor's April 16, 2010 email message confirming that she had acquired the Domain Names and the web hosting account referenced was signed in her capacity as partner in T&T.  She then *billed T&T for her time spent on this task.* [Exhibit 80.]
- T&T paid for the Domain Names and web hosting account.
- In August 2011, Taylor emailed Trowbridge a "list of domains *we currently have* at GoDaddy.com," including SyndicationLawyers.com as the firm's "primary email and website domain."  [Exh. 46]
- Taylor further advised: "I have all *our stuff* on auto-renew with the Company Credit card so it should never expire or get transferred."
- For the remainder of T&T's existence, the Domain Names were treated as firm assets and were paid for and renewed with firm funds.
- Taylor acknowledged that, as of June 2013, the primary Domain Name SyndicationLawyers.com was used synonymously with T&T.
- TTS acquired the following domain names with firm funds directly:
- The following domains were acquired and used by TTS with TTS funds:

Regaattorney.com

Reg-A.com

Regulation-a.com

Regulationas.com

Privatemoneylaw.com

Thesyndicationattorneys.com

[Taylor and Ivey testimony and GoDaddy receipts.]

Taylor's consistent references to "our law firm" in connection with the Domain Names "we currently have"; coupled with the fact that the Domain Names were exclusively paid for and maintained with firm funds (and were set up to automatically renew on the firm credit card) proves that the Domain Names were the property of the partnership T&T and TTS.  *See* Cal. Corp. Code §16204(c).

The only difference between the reservation of SyndicationLawyers.com and the purchase of the other Domain Names is that the former occurred while Taylor was employed as an independent contractor and the latter when Taylor was a partner in T&T or TTS.  As shown above some of the subject domains were purchased by TTS directly.  Regardless of her employment status, in both instances Taylor acted as an authorized agent in completing sales contracts on behalf of a known principal.  *United States ex rel. Oliver v. Parsons Co., supra*, 195 F.3d at 462.  Her statement that she "always believed" she owned the domain name SyndicationLawyers.com because it was "an extension" of another website she owned.  No contrary interpretation of these undisputed facts is plausible or possible.

C.  **Plaintiff Acquired the Domain Names From its Predecessor Firm.**

When Plaintiff formed in 2014, T&T's assets were incorporated into it. For this reason, each of Plaintiff's partners executed a new partnership agreement providing that all real and personal property of the partnership would be owned by

the Partnership *as an entity*, and that no partner would have any ownership interest in that property in his or her own individual name or right. [Exh. 9] Accordingly, TTS used SyndicationLawyers.com for its website when it commenced operating in January 2014.

TTS's partnership agreement and its partners' treatment of the Domain Names can only be interpreted one way: all of TTS's assets, including the Domain Names, constitute firm property, none of which is owned by any one of its individuals partners. There is no record evidence to contradict this conclusion. Nor is there any evidence suggesting that Taylor is not bound by the terms of TTS's partnership agreement.

### D. <u>Taylor Converted the Domain Names.</u>

Having established that Plaintiff owns the Domain Names, it is also incontrovertible that Taylor converted them.

Under controlling California law, conversion is "any act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto." *Plummer v. Day/Eisenberg, LLP,* 184 Cal.App.4th 38, 50 (2010). It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his or her own use. *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.

"Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066 (1998) (internal citations omitted.)

It is not disputed that Taylor exercised dominion and control over the Domain names by unilaterally shutting down the SyndicationLawyers.com website

Civil Case No. 8:16-cv-00771
PLAINTIFF'S TRIAL BRIEF

and email accounts linked to it.  Under applicable law, it is irrelevant that Taylor purports to have done so legally.  *Burlesci, supra,* 68 Cal.App.4th at 1066.  Also under applicable law, damages from conversion are presumed in the form of deprivation of the converted property and the time and money expended in pursuit of its retrieval.  Cal. Civ. Code § 3336.  Applying this law to the undisputed facts, it is undisputed that Taylor is liable for converting the Domain Names.

## IV.   **CONCLUSION**

For the foregoing reasons, plaintiff contends it will prevail at trial on its claim of conversion.

Respectfully submitted,

Dated: <u>September 18, 2017</u>       <u>        /s/ Ben T. Lila        </u>
Ben T. Lila (SBN 246808)
Email: blila@mandourlaw.com
Attorneys for plaintiff and
counterclaim defendant,
TROWBRIDGE SIDOTI LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, I filed the foregoing:

**PLAINTIFF'S TRIAL BRIEF**

with the Court's CM/ECF electronic filing system, which will provide notice of the same on the following:

Robert Peter Weiss
NARVID SCOTT LLP
15165 Ventura Boulevard, Suite 315
Encino, CA 91403
Telephone: (818) 907-8986
Facsimile: (818) 907-9896
Email: rweiss@narvidscott.com
Attorneys for Defendants,
KIM LISA TAYLOR and
SYNDICATION ATTORNEYS, PLLC

Dated: September 18, 2017      /s/ Ben T. Lila
                                Ben T. Lila
                                Email: blila@mandourlaw.com

Civil Case No. 8:16-cv-00771
PLAINTIFF'S TRIAL BRIEF

-11-