| | |
|---|---|
| 1 | ROBERT WEISS (SBN 118842)<br>Email: rweiss@narvidscott.com |
| 2 | **NARVID SCOTT LLP**<br>15165 Ventura Blvd., Suite 315 |
| 3 | Sherman Oaks, CA 91403-3373<br>Voice: (818) 907-8986 ext. 129 |
| 4 | Fax: (818) 907-9896 |
| 5 | CRAIG A. GELFOUND (SBN 176378)<br>Email: craig.gelfound@arentfox.com |
| 6 | **ARENT FOX LLP**<br>555 West Fifth Street, 48th Floor |
| 7 | Los Angeles, California 90013-1065<br>Telephone: 213.629.7400 |
| 8 | Facsimile:  213.629.7401 |
| 9 | Attorneys for Defendants and Counterclaimants |
| 10 | KIM LISA TAYLOR and SYNDICATION ATTORNEYS, PLLC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROWBRIDGE SIDOTI LLP, a California Limited Liability Partnership,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>KIM LISA TAYLOR and SYNDICATION ATTORNEYS, PLLC, a Florida Professional Limited Liability Company,<br><br>    Defendants and Counterclaimants. | Case No. 8:16-CV-00771-ODW-SK<br><br>Assigned to the Honorable Otis D. Wright II<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Place:    Courtroom 5D, 5th Floor, 350 W. 1st St, Los Angeles, CA 90012<br>Judge:    Hon. Otis D. Wright II<br><br>Pre-Trial Conf.: September 25, 2017<br>Trial:    October 17, 2017 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. - 1 -

II.  STATEMENT OF FACTS ................................................................................... - 2 -

  A. In April 2008, Ms. Taylor's Husband Acquired the Domain Name SyndicationLawyer.com (Singular) and Registered It in His Name ................ - 2 -

  B. In June 2009, Ms. Taylor Acquired the Domain Name SyndicationLawyers.com and Registered it in Her Name ............................... - 3 -

  C. In or around September 2009, Ms. Taylor and Mr. Trowbridge Formed the Partnership Trowbridge Taylor LLP ............................................................. - 4 -

  D. In April 2010, Ms. Taylor Acquired the Related Domain Names and Registered Them in her Name. ..................................................................... - 4 -

  E. In or around January 2014, Ms. Taylor, Mr. Trowbridge, and Ms. Sidoti Formed the Partnership Trowbridge Taylor Sidoti LLP and Trowbridge & Taylor, LLP Continued to Operate as a Separate Entity. .............................. - 4 -

  F. Ms. Taylor Withdrew from the Partnership and Did Not Solicit TTS Clients. .......................................................................................................... - 5 -

  G. On or about April 15, 2016, Plaintiff Began Using CrowdfundingLawyers.net as its Domain…………………………………..… -6 -

III. ARGUMENT ........................................................................................................ - 6 -

  A. Burden of Proof. ............................................................................................ - 6 -
  B. Plaintiff Cannot Establish the Necessary Elements of its Conversion Claim............................................................................................................ - 6 -

   1. Registration of the Domain Names in Ms. Taylor's Name Constitutes Ownership ........................................................................................... - 7 -
   2. Under *Any* Legal Theory, Ms. Taylor is the Owner of the Domain Name SyndicationLawyer.com (Singular)…………………….……...- 8 -
   3. Defendants' Evidence Controverts Plaintiff's Self-Serving Statements in Support of Its Claim for Ownership of the Domain Names…..…- 8 -
   4. Plaintiff Cannot Meet Its Burden of Proof to Show Damages Resulting from the Alleged Conversion…………………………..-14 -

IV. DEFENDANT IS ENTITLED TO AN ACCOUNTING AND PAYMENT OF HER CAPITAL ACCOUNT AND PROFITS ................................................... - 15 -

V. CONCLUSION ................................................................................................... - 17 -

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
  55 Cal. Rptr. 3d 621 (Cal. App. 2d Dist. 2007)……………………….....6

*Office Depot Inc. v. Zuccarini*
  596 F.3d 696, 699 (9th Cir. 2010)……………………………………7

*Kremen v. Cohen*
  337 F.3d 1024 (9th Cir. 2003)...................................................................7

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
  210 F.3d 1099 (9th Cir. 2000)…………………………………………..6

*Tolan v. Cotton*,
  134 S. Ct. 1861 (2014)……………………………………………….6

**Statutes**

Cal. Civ. Code § 1550 .................................................................................. 10, 12

Cal. Corp. Code § 16203 ................................................................................11, 14

Cal. Corp. Code § 16204(a)(1)-(2) .....................................................................11

Cal. Corp. Code § 16204(b)(1)-(2) .....................................................................11

Cal. Corp. Code § 16204(c) ................................................................................11

Cal. Corp. Code § 16204(d)…............................................................................11

Cal. Corp. Code § 16807.....................................................................................13

Cal. Corp. Code § 16401……..............................................................................16

Cal. Corp. Code § 16404……..............................................................................17

**Other Authorities**

Judicial Council Of California Civil Jury Instructions No. 320................................13

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants and Counterclaimants Kim Lisa Taylor ("Ms. Taylor") and Syndication Attorneys, PLLC (collectively, "Defendants") submit the following Trial Brief.

## I. **INTRODUCTION**

Ms. Taylor is the registered *owner* of SyndicationLawyer.com (singular), SyndicationLawyers.com (plural), and other related domain names[1] ("Related Domain Names") (collectively, the "Domain Names"). Much like title in land, Ms. Taylor's ownership interest in the Domain Names is publicly recorded by virtue of the fact that she is listed as the registrar/owner. Ms. Taylor, therefore, is, as a matter of law, not only the owner, but also retains the right of possession and control of the Domain Names. Because Plaintiff has no ownership or possessory interest in the Domain Names, its claim for conversion fails as a matter of law.

Even assuming arguendo that the Court gives credence to Plaintiff's legal theory that it somehow otherwise acquired ownership interest in the Domain Names through Ms. Taylor, there are multiple genuine issues of disputed material facts as to the circumstances under which Ms. Taylor acquired and maintained SyndicationLawyer.com (singular), SyndicationLawyers.com (plural) and the Related Domain Names. Because there is *no* written agreement evidencing Plaintiff's ownership right in the Domain Names, Plaintiff principally relies upon self-serving statements made by Plaintiff's named-partner Eugene Trowbridge, who claims that she acquired the Domain Names on behalf of himself and/or former companies in which he was a principal or partner and that all such companies were successors in interest to each other. As set forth below, Defendants have proffered evidence vigorously disputing such conclusory statements. Namely:

- Ms. Taylor did not acquire the Domain Names on behalf of Eugene Trowbridge, any of his entities or any of the previous partnerships in

which she and he were partners; she retained ownership and licensed the Domain Names to such partnerships for their use during the time she was a partner.

- Ms. Taylor never entered into any agreement, oral or written, to transfer ownership of any of the Domain Names.
- Plaintiff is *not* a successor-in-interest to Trowbridge & Taylor LLP (which itself never had ownership interests) and therefore, Plaintiff could not have acquired ownership interests by succession.

Plaintiff, therefore, cannot sustain its burden of proof at trial.

In any event, Plaintiff has not sustained its burden to establish that it has suffered damage as a result of the alleged conversion of the Domain Names, and therefore, is not entitled to prevail on its conversion claim.

Finally, under *any* legal theory, Ms. Taylor is indisputably the owner of SyndicationLawyer.com (singular). Ms. Taylor's husband first acquired SyndicationLawyer.com (singular) in 2008 long before any of the relevant partnerships were even contemplated. SyndicationLawyer.com was never used by the relevant partnerships and has at all times, been exclusively used by Ms. Taylor. Most importantly, SyndicationLawyer.com remained at all times registered in the name of her or Ms. Taylor or her husband. Defendants, therefore, are entitled to a declaration that Ms. Taylor is the owner of SyndicationLawyer.com.

## II. STATEMENT OF FACTS

### A. In April 2008, Ms. Taylor's Husband Acquired the Domain Name SyndicationLawyer.com (Singular) and Registered It in his Name.

In 2008, Ms. Taylor's husband, Christopher Guillet, who is a marketing professional, suggested that she market her services under the domain name SyndicationLawyer.com. To that end, on or about April 24, 2008, Mr. Guillet purchased the domain name SyndicationLawyer.com and registered it under his own name. Ms. Taylor then used SyndicationLawyer.com in connection with her

practice, including using it for her separate email address and on her business cards and stationery.[2] At the time, Ms. Taylor worked as a contract attorney for Mr. Trowbridge and others and solicited her own syndication legal clients.

On or about April 19, 2010, Mr. Guillet renewed the registration for SyndicationLawyer.com for two years, once again in his name. Mr. Guillet transferred the registration, and thereby ownership, of SyndicationLawyer.com to Ms. Taylor on or about March 6, 2013. From March 6, 2013 to present, Ms. Taylor has owned SyndicationLawyer.com in her name. She has not entered into any agreement, oral or written, to transfer the registration and ownership of SyndicationLawyer.com.

### B. In June 2009, Ms. Taylor Acquired the Domain Name SyndicationLawyers.com and Registered in Her Name.

On or about June 1, 2009, Ms. Taylor acquired the domain name SyndicationLawyers.com (plural) and registered it in her own name. From June 2009 to present, the registration for SyndicationLawyers.com has remained registered in Ms. Taylor's name, and she has, thus, retained ownership. Further, she has never entered into an agreement, oral or written, to transfer the registration and ownership.

Notably, at that time, Ms. Taylor and Mr. Trowbridge had not formed any partnership, and had merely engaged in preliminary discussions about the possibility of forming a partnership. Ms. Taylor was an independent contractor working for Mr. Trowbridge and other law firms, and pursuant to her Independent Contractor Agreement with Mr. Trowbridge, had no authority to act on his behalf other than by express instruction to do so.

### C. In or around September 2009, Ms. Taylor and Mr. Trowbridge Formed the Partnership Trowbridge Taylor LLP.

In September, 2009, Mr. Trowbridge and Kim Taylor entered into an oral

---

[2] Ms. Taylor continues to maintain and use this email address.

agreement to form a California Limited Liability Partnership to be known as Trowbridge & Taylor ("T&T"), and to begin operations as T&T on January 1, 2010. No formal written partnership agreement was ever signed by Mr. Trowbridge and Ms. Taylor, and no signed writing exists that specifically addresses the ownership or disposition of intellectual property that either of them owned at that time. (*Id.*) It is instructive to note that just like Ms. Taylor, Eugene Trowbridge owned domain names and intellectual property, none of which is claimed by either of them to have been donated to the newly formed T&T partnership. Rather, there is every indication that Mr. Trowbridge claims full legal title to and beneficial ownership of the intellectual property he had acquired as of January 1, 2010. Yet somehow he believes that Ms. Taylor is not equally entitled.

### D. In April 2010, Ms. Taylor Acquired the Related Domain Names and Registered Them in her Name.

On or about April 16, 2010, Ms. Taylor purchased and registered the Related Domain Names in her own name. Thereafter, Ms. Taylor licensed the Related Domain Names to T&T for use as pointers to the T&T website. *Id*.

On March 6, 2013, Ms. Taylor renewed the registration for the Related Domain Names for two years in her own name. She continued to license the names to T&T.

At all times, the Related Domain Names have been registered and owned in Ms. Taylor's name.

### E. In or around January 2014, Ms. Taylor, Mr. Trowbridge, and Ms. Sidoti Formed the Partnership Trowbridge Taylor Sidoti, LLP and Trowbridge & Taylor, LLP Continued to Operate as a Separate Entity.

On December 16, 2013, Ms. Taylor, Mr. Trowbridge, and Jillian Sidoti formed Trowbridge Taylor Sidoti LLP ("TTS"). On or about January 1, 2014, Ms. Taylor, Mr. Trowbridge, and Ms. Sidoti began operation of TTS. The TTS partnership agreement makes no representation that it is the successor-in-interest to T&T or Mr. Trowbridge's prior sole proprietorship. As T&T still had ongoing

matters, Mr. Trowbridge and Ms. Taylor continued to operate T&T as a separate entity through most of 2014, while directing new business to TTS. Indeed, T&T and TTS filed separate tax returns for 2014.

Likewise, prior to January 1, 2014, Jillian Sidoti had maintained a law practice for several years as a sole proprietorship doing business as "The Law Offices of Jillian Sidoti." By agreement with Ms. Taylor and Mr. Trowbridge, she continued to operate that business for a significant portion of calendar year 2014 for the purpose of wrapping up her pending legal matters, while at the same time directing new business to TTS. In sum, collectively, the partners in TTS operated three entirely separate law firms through 2014.

At the end of 2014, on or about December 22, Mr. Trowbridge and Ms. Taylor formally wound up T&T and filed a notice of suspension with the California Secretary of State. Following the winding up of T&T, Mr. Trowbridge and Ms. Taylor did *not* enter into any agreement regarding the disposition of T&T's assets and more specifically, did not agree to transfer T&T's assets to TTS or any other entity for that matter. They did not otherwise discuss the issue.

### F. Ms. Taylor Withdrew from the Partnership and Did Not Solicit TTS Clients.

On March 21, 2016, Ms. Taylor tendered her letter of resignation from TTS effective on March 31, 2016. Following her resignation, Ms. Taylor did not market to existing TTS clients through a mass mailing or a telephone campaign. In fact, she did not in any way solicit TTS clients. Rather, as both Ms. Taylor and Mr. Trowbridge testified, only two existing TTS clients who had work-in- progress at that time of Ms. Taylor's resignation followed Ms. Taylor to her new practice and both did so unsolicited after learning Ms. Taylor had withdrawn from TTS.

### G. On or about April 15, 2016, Plaintiff Began Using CrowdfundingLawyers.net as its Domain.

Within two weeks of Ms. Taylor's resignation (by April 15, 2016), and prior to filing the instant lawsuit on April 25, 2016, Plaintiff had already changed its

website domain to CrowdfundingLawyers.net and had begun using CrowdfundingLawyers.net email addresses for its partners and staff.

### III. ARGUMENT

#### A. Burden of Proof

Plaintiff bears "both the initial burden of fact and the ultimate burden of production." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In construing those facts, the Court must view them "in a light most favorable to" Defendants. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Here, Plaintiff fails to meet its initial burden because they rely upon self-serving and conclusory statements regarding its ownership interest in the Domain Names, which are rebutted by ample evidence raised by Defendants herein. Plaintiff further has failed to proffer admissible evidence demonstrating that it has incurred damages as a result of the alleged conversion.

#### B. Plaintiff Cannot Establish the Necessary Elements of its Conversion Claim.

To sustain a claim for conversion, Plaintiff must show "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 55 Cal. Rptr. 3d 621, 638 (Cal. App. 2d Dist. 2007).

Here, Plaintiff purports to own all rights and interest in the Domain Names. Yet, Plaintiff plainly fails to establish this essential element of conversion as a matter of law. As detailed below, Ms. Taylor is the registrant of the Domain Names, and therefore, by definition, the owner of the Domain names. To the extent there is any ambiguity as to this legal point, Defendants have provided evidence controverting Plaintiff's self-serving statements in support of its claim of ownership over the Domain Names. Consequently, Plaintiff cannot prove its conversion

claim. For the same reasons, Plaintiff has not defeated Defendants' counterclaim for declaratory relief related to ownership of the Domain Names.

Furthermore, despite numerous conclusory allegations in its Complaint and discovery responses, Plaintiff has yet to produce any admissible evidence proving actual damages as a proximate result of this alleged conversion. As such, Plaintiff has not met its burden to establish the third element of a conversion claim.

### 1. Registration of the Domain Names in Ms. Taylor's Name Constitutes Ownership.

As the Ninth Circuit explained in *Office Depot Inc. v. Zuccarini*: "Registrars maintain an ownership record for each domain name they have registered with a registry. Action by a registrar is needed to transfer ownership of a domain name from one registrant to another. [I]ndividuals and companies called 'registrants' *own* the domain names." 596 F.3d 696, 699 (9th Cir. 2010) (emphasis added). Indeed, registration of a domain name reflects ownership in the same way recording a deed with the title office establishes ownership of real property. *Kremen v. Cohen* 337 F.3d 1024, 1030 (9th Cir. 2003).

Here, Ms. Taylor is the registrant for the each of the Domain Names. She has never transferred the registration (and thereby ownership) to any of partnerships at issue here.

### 2. Under *Any* Legal Theory, Ms. Taylor is the Owner of the Domain Name SyndicationLawyer.com (Singular).

As the undisputed facts show, Ms. Taylor's husband Christopher Guillet acquired the domain name SyndiationLawyer.com (singular) in 2008 before any partnership with Mr. Trowbridge was even contemplated. At the time, she worked for Mr. Trowbridge and others as a contract attorney, and solicited her own syndication legal business. Additionally, Ms. Taylor has exclusively used and maintained an email address using the domain SyndicationLawyer.com from 2008 to this day. Accordingly, there is no plausible basis for asserting that SyndicationLawyer.com was acquired on behalf of T&T or any of the relevant

partnerships. Even after T&T was formed, Mr. Guillet renewed SyndicationLawyer.com in April 2010 again under his own name. Ms. Taylor herself did not acquire legal title to SyndicationLawyer.com until her husband transferred it to her name in March 2013. Plaintiff has no factual or legal basis to challenge Ms. Taylor's ownership of SyndicationLawyer.com.

        3.      Defendants' Evidence Controverts Plaintiff's Self-Serving Statements in Support of Its Claim for Ownership of the Domain Names.

In support of its claim for ownership, Plaintiff argues that (1) Taylor reserved SyndicationLawyers.com *on behalf* of the T&T partnership (which did not exist at the time), (2) the T&T partnership paid for the Domain Names; and (3) Plaintiff acquired the Domain Names from T&T as its successor in interest. As set forth below, Plaintiff fails to support *any* of these propositions with uncontroverted facts. Because each element is necessary for Plaintiff to obtain the relief it requests, Plaintiff cannot prevail on its claim for conversion.

        a.      Ms. Taylor Reserved SyndicationLawyers.com, so that the Contemplated Partnership Could Potentially *Use*, Not *Own*, the Domain.

In support of the proposition that SyndicationLawyers.com was obtained for the T&T partnership, Plaintiff inexplicably cites to statutory authority stating that property acquired by a partnership is property of the partnership. *See* Motion at pg. 10, lines 12-13. Here, it is undisputed that Ms. Taylor purchased and registered SyndicationLawyers.com in her own name *using her personal funds* in June 2009, *three months* before T&T was formed.[3] As such, SyndicationLawyers.com could not have been acquired by a partnership that did not exist. Likewise, T&T had no assets as of June 2009, and as such, SyndicationLawyers.com could not have been purchased using T&T's assets. Thus, the authority cited by Plaintiff regarding a

---

[3] Ms. Taylor also disputes that Mr. Trowbridge ever reimbursed her for the purchase of SyndicationLawyers.com.

presumption related to partnership property is inapposite.

The documentary evidence actually reflects that Ms. Taylor obtained SyndicationLawyers.com, so that she and Mr. Trowbridge could potentially use—not own—the domain name in a future joint partnership. In fact, Mr. Trowbridge's own statement reflects that at that time, he and Ms. Taylor agreed that she could acquire SyndicationLawyers.com, so that the contemplated partnership could *use* it; stating in email correspondence to Ms. Taylor, "I think we should get [SyndicationLawyers.com] and set it aside for our website. For sure, one of us or the firm can use it."). This statement evidences that both Ms. Taylor and Mr. Trowbridge understood that she was obtaining the name so that the contemplated partnership could *use*, not *own*, it. Furthermore, Mr. Trowbridge was non-committal regarding his own potential use of the domain name, or of the partnership using it in the future, and left open the possibility that "one of us" might use it, meaning that possibly only Kim Taylor would choose to use SyndicationLawyers.com. As it turned out, Trowbridge was reluctant to use the SyndicationLawyers.com domain name, only first experimenting with it as an email address in 2012 (nearly *three years* after Ms. Taylor obtained and began using it as her primary email address), and thereafter continued to for the most part use gene@genetrowbridge.com as his primary email address.

As Ms. Taylor testified at her deposition, it was her intent that she would retain ownership of SyndicationLawyers.com for T&T to use, i.e. license from her. She anticipated that she would use the domain name for her own business or license it to a potential future partnership with Mr. Trowbridge. Nothing in the evidence provided by Plaintiff demonstrates, or even suggests, that Ms. Taylor and Mr. Trowbridge entered into any type of contract for Mr. Trowbridge or their future partnership to *own* SyndicationLawyers.com. There was simply no meeting of the minds evidencing consent to such an agency relationship or transfer of ownership. *See* Cal. Civ. Code § 1550. Rather, later payments made by T&T to renew the

names simply reflected consideration for the license Ms. Taylor granted to T&T to use SyndicationLawyers.com.

In any event, the Independent Contractor Agreement,[4] which controlled Mr. Trowbridge's and Ms. Taylor's working relationship at the time she acquired the domain name "Syndicationlawyers.com," expressly prohibited Ms. Taylor from acting as an agent for Mr. Trowbridge as set forth in paragraph 12:

> The relationship between Gene and Kim pursuant to this Agreement is an independent contractor relationship. None of the provisions of this Agreement, nor any act or omission by either party, are intended to create, nor shall they be deemed or construed to create, any relationship between the parties other than that of independent contractors. Neither party is authorized nor shall either have the ability to make representations for, or otherwise bind, the other party in any manner whatsoever with regard to third parties, except as specifically provided in this Agreement or any exhibits hereto.

In light of the foregoing, Kim Taylor could not have entered into a sales contract with GoDaddy in June of 2009 on behalf of Mr. Trowbridge absent some signed writing authorizing her to do so. Plaintiff has provided no such evidence.

### b. T&T Never Acquired Ownership of the Domain Names.

The California Corporations Code defines partnership property simply as "property acquired by a partnership." Cal. Corp. Code § 16203. It explains that such property is property of the partnership and not of the partners individually. *Id*. There are several ways that a partnership can acquire property. If it is acquired in the name of the partnership or in the name of "one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or the existence of a partnership but without an indication of the name of the partnership," then it is partnership property. *Id.* at § 16204(a)(1)–(2). In addition, property becomes partnership property by transfer if the transfer is made to (1) the partnership in its name, or (2) "one or more

---

[4] The Independent Contractor Agreement is otherwise silent with respect to intellectual property.

partners in their capacity as partners in the partnership, if the name of the partnership is indicated in the instrument transferring title to the property." *Id.* at § 16204(b)(1)–(2). Further, if partnership assets are used to purchase property, that property is presumed to be partnership property even if not acquired in the name of the partnership. *Id.* at § 16204(c). However, when property is acquired in the name of one or more of the partners, without an indication in an instrument transferring title to the property … and without using partnership assets, that property is presumed to be separate (non-partnership) property, even if used for partnership purposes. *Id.* at § 16204(d).

To establish that it acquired ownership of the Domain Names, Plaintiff principally relies upon (1) evidence that T&T *used* the Domain Names and (2) evidence that T&T paid to maintain the web hosting and renewals for the Domain Names. Ms. Taylor disputes none of these underlying facts, but rather, contends that they merely evidence that Ms. Taylor licensed the Domain Names to T&T to use and that they are not enough to establish Plaintiff's ownership of the Domain Names.

First, T&T's use of the Domain Names and email correspondence regarding use or T&T "*had*" the Domain Names is far from conclusive evidence or an agreement transferring ownership. Indeed, at all times, Ms. Taylor considered herself the owner of SyndicationLawyers.com and the Related Domain Names. She merely licensed the Domain Names to T&T for the firm's use.[5] Second, Ms. Taylor maintains that the payments made by T&T merely reflect consideration for the license to use the Domain Names owned at all times by Ms. Taylor.

Moreover, Plaintiff has proffered *no* evidence of any explicit agreement, oral

---

[5] Mr. Trowbridge himself did not consistently use the SyndicationLawyers.com domain name for his email. In fact, Mr. Trowbridge did not even test his SyndicationLawyers.com email address until 2012 – nearly three years after Ms. Taylor obtained and began using it – and continued to consistently use gene@genetrowbridge.com until early 2016.

or written, (other than self-serving statements made by Mr. Trowbridge seven years later), showing that Ms. Taylor at any time acted as an agent in acquiring the Domains or otherwise assigned or transferred the Domain Names to T&T.  At the time Ms. Taylor and Mr. Trowbridge formed the law firm T&T in September 2009, Ms. Taylor and her husband already owned the domain names SyndicationLawyer.com (singular) and SyndicationLawyers.com (plural) so neither of them were purchased with partnership funds.

Ms. Taylor and Mr. Trowbridge never entered into a formal partnership agreement or any other type of agreement, written or otherwise, regarding the ownership or disposition of assets, including intellectual property, that Ms. Taylor and Mr. Trowbridge owned pre-formation of T&T. Indeed, the parties never even discussed the issue.

Further, Ms. Taylor's long history of marketing her services using Syndication Lawyer(s) domain names and email addresses, it is implausible that she would implicitly give up her right to control those domain names.  Likewise, Ms. Taylor and Mr. Trowbridge never entered into an agreement evidencing that Ms. Taylor acquired the Related Domain Names on behalf of T&T. Essentially Plaintiff is attempting rewrite history from a purely self-serving perspective without any hard evidence to justify its position.

In sum, Plaintiff has proffered *no* agreement showing that it owns the Domain Names.  To the contrary, the conspicuous lack of such an agreement shows that Plaintiff did *not* acquire ownership of the Domain Names held exclusively in Ms. Taylor's name.

        c.    Because Plaintiff is Not the Successor-in-Interest to T&T or TTS, It Did Not Acquire Any Rights Held by T&T or TTS.

Plaintiff did not acquire any interest in the Domain Names from T&T because it is not the legal successor-in-interest to T&T.  While Plaintiff may be a successor-in-interest to TTS, importantly, the partnership agreement for TTS makes

no representation that it is the successor-in-interest to T&T.

Indeed, TTS could not have immediately become a successor-in-interest because T&T continued to operate as a separate entity for approximately one year after the formation of TTS:  TTS was formed as a limited liability partnership on December 16, 2013 and T&T was not suspended with the California Secretary of State until December 22, 2014. Additionally, T&T and TTS separately filed tax returns for 2014, further evidencing that they operated simultaneously as separate entities. Meanwhile, Ms. Sidoti also continued to operate her separate firm to conclude matters pending prior to the formation to TTS. Thus, not only is the TTS partnership agreement silent on whether it is the so-called successor in interest to T&T, but in point of fact, all three law practices co-existed for most of calendar year 2014.

Ms. Taylor did not execute any agreement disposing of T&T's assets and by no means assigned T&T's assets to TTS. Pursuant to California law, those assets are distributed among the partners, i.e. ownership would have transferred to Mr. Trowbridge and Ms. Taylor as individuals. *See* Cal. Corp. Code § 16807. Accordingly, even if T&T did have ownership interest in the Domain Names (which it did not), that alleged ownership interest was never transferred to TTS.

Finally, the TTS partnership agreement itself demonstrates that the parties had no intent to transfer ownership of the Domain Names from T&T or Ms. Taylor. Specifically, the partnership agreement provides in relevant part (consistent with Cal. Corp. Code § 16203):

> All real and personal property of the partnership shall be owned by the Partnership as an entity. No Partner shall have any ownership interest in the Partnership Property in his or her own individual name or right.

The fact that Ms. Taylor never changed the registration of the Domain Names from her name to TTS confirms that she did not transfer ownership under the express terms of the TTS partnership agreement.

Notably, Mr. Trowbridge drafted the TTS Partnership Agreement and is now attempting to read into the silence with respect to his omission of any express provision regarding the transfer of intellectual property from T&T to TTS. This is particularly unfounded here because Mr. Trowbridge was aware at the time he wrote the TTS agreement that Ms. Taylor held the Domain Names in her own name and could have separately addressed them. If anything, the alleged ambiguity should not be supplemented by conflicting parole evidence, but rather be construed against the drafter. Judicial Council Of California Civil Jury Instructions ("CACI") No. 320.

### 4. Plaintiff Has Not Met Its Burden of Proof to Show Damages Resulting from the Alleged Conversion.

Both Ms. Taylor and Mr. Trowbridge have testified regarding two TTS clients who were working with Ms. Taylor on current matters at the time of her resignation, and who upon learning that she had withdrawn from the firm, voluntarily requested that she take their matters with her rather than start working with someone else at TTS. No evidence whatsoever has been offered to show that Ms. Taylor did some mass mailing or telephone campaign to existing TTS clients, or otherwise solicited existing clients to follow her out of TTS. Nor has Plaintiff been able to show any actual financial injury directly related to Defendants' refusal to capitulate to Plaintiff's demand that she turn over the SyndicationLawyers.com domain and website other than some non-recoverable personal inconvenience.

Within two weeks of Ms. Taylor's resignation (by April 15, 2016), and prior to filing the instant lawsuit on April 25, 2016, Plaintiff had already changed its website domain to CrowdfundingLawyers.net and had begun using CrowdfundingLawyers.net email addresses for its partners and staff. Thus, it is impossible to determine whether any alleged damages suffered by Plaintiff could be attributed to Defendant's actions versus Plaintiff's own actions in changing its identity. Thus, Plaintiff cannot satisfy the third element of damages for its

conversion cause of action.

## IV. DEFENDANT IS ENTITLED TO AN ACCOUNTING AND PAYMENT OF HER CAPITAL ACCOUNT AND PROFITS

Defendant is entitled, pursuant to common law and the TTS partnership agreement, to an Accounting of partnership finances. That includes a fair calculation and payment of her capital account, which Plaintiff has estimated to be approximately $30,000, and documentation supporting expenses of the firm, including payments to other partners. Eugene Trowbridge, as the managing partner of TTS, owes a fiduciary duty to provide such an accounting to Ms. Taylor.

Ms. Taylor and her forensic accounting expert will show, through banking and accounting records of the TTS that Eugene Trowbridge, as its managing partner, has improperly compensated himself outside of the firm's normal accounting practices and procedures. Mr. Trowbridge has either paid or reimbursed himself some $200,000 for purported business expenses without proper documentation and contrary to generally accepted accounting principles and IRS guidelines. For every $100,000 that he is required to return to the firm, Kim Taylor is entitled to 30% of that amount.

Despite numerous discovery requests and meet and confer conferences, Plaintiff has failed to produce expense reconciliations and supporting documentation to justify Mr. Trowbridge's financial manipulations of TTS bank accounts, books and records.

The TTS Partnership Agreement provides the following with respect to the fiduciary duties of its partners and consequences for breach:

> 18.2    Duty of Loyalty
>
> A Partner's duty of loyalty to the Partnership and the other Partners is limited to the following:
>
> (i) to account to the Partnership and hold as trustee for it any Property, profit, or benefit derived by the Partner in the conduct and winding up of

the Partnership business or derived from a use by the Partner of Partnership property, including the appropriation of a Partnership Opportunity; …

17. Consequences of Violation of Covenants

If a Partner breaches any provision of this Partnership Agreement (a "Breaching Partner"), then, in addition to all other rights and remedies available to the Partnership, the Breaching Partner shall be liable in damages, without requirement of a prior accounting, to the Partnership for all costs and liabilities that the Partnership or any Partner may incur as a result of such breach, including reasonable attorneys' fees incurred in connection with the breach and in connection with recovery of damages from the Breaching Partner. The Partnership may apply any distributions otherwise payable to the Breaching Partner to satisfy any claims it may have against the Breaching Partner.

Further, Cal. Corp. Code § 16401, *et seq.* provides in pertinent part:

"(a) Each partner is deemed to have an account that is subject to both of the following:

(1) Credited with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, the partner contributes to the partnership and the partner's share of the partnership profits.

(2) (c) A partnership shall reimburse a partner for payments made and indemnify a partner for liabilities incurred by the partner in the ordinary course of the business of the partnership or for the preservation of its business or property.

California Corporations Code Section 16404 provides:

(a) The fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subdivisions (b) and (c).

(b) A partner's duty of loyalty to the partnership and the other partners includes all of the following:

To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity."

Finally, well beyond the discovery cutoff and on the eve of trial, Plaintiff has engaged in a document dump that is inherently unfair and prejudicial to Ms. Taylor's claims. Counterclaimants will seek an order, through a motion in limine, to exclude such 11th hour evidence or any reference thereto.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court: deny Plaintiff's conversion claim; grant Defendants' motion for declaratory relief finding that Ms. Taylor owns the Domain Names; require Mr. Trowbridge to return funds equal to the amount of his undocumented expenses; and such other relief as the court may deem just and proper.

Dated: September 18, 2017

**ARENT FOX LLP**
CRAIG A. GELFOUND

**NARVID SCOTT LLP**
ROBERT WEISS

By:/s/
ROBERT WEISS
Attorneys for Defendants and Counterclaimants
KIM LISA TAYLOR AND SYNDICATION ATTORNEYS, PLLC