# United States District Court
# Central District of California

| | |
|---|---|
| TROWBRIDGE SIDOTI LLP,<br><br>　　　　Plaintiff/Counterdefendant,<br><br>　　v.<br><br>KIM LISA TAYLOR and SYNDICATION ATTORNEYS, PLLC,<br><br>　　　　Defendants/Counter Claimants. | Case № 8:16-cv-00771-ODW-SK<br><br>**ORDER DENYING PLAINTIFF/COUNTERDEFENDANT'S MOTION FOR PERMANENT INJUNCTION [126]; DENYING PLAINTIFF/COUNTERDEFENDANT'S MOTION FOR ATTORNEYS' FEES [128]; AND DENYING DEFENDANTS/COUNTER CLAIMANTS' MOTION FOR ATTORNEYS' FEES [127]** |

## I. INTRODUCTION

This suit and countersuit relate to the ownership of the domain name "SyndicationLawyers.com" (and related domains and brand names). On March 6, 2018, the Court entered judgment in favor of Plaintiff Trowbridge Sidoti LLP ("TS") on its claim for conversion, after a jury returned a verdict in its favor. (Judgment, ECF No. 122.) The Court entered judgment against TS on its claims for False Designation of Origin, violation of California Business & Professions Code § 17200, et seq., and violation of common law unfair competition, in light of the Court's prior

summary judgment order. (*Id.*) The Court ordered Defendants to pay $7,800.00 in damages, as determined by the jury. (*Id.*)

Now, TS moves for a permanent injunction, which it claims will provide the relief intended by the jury, and requested in its Complaint. (Mot. for Inj. 3, ECF No. 126.) Both parties also cross-move for a declaration that they are the prevailing party, and for attorneys' fees. (ECF Nos. 127, 128.) For the reasons discussed below, the Court **DENIES** TS's Motion for Permanent Injunction (ECF No. 126), **DENIES** both parties' Motion for Attorneys' Fees (ECF Nos. 127, 128), and determines TS is the prevailing party.[1]

## II. FACTUAL BACKGROUND

The Court previously set forth the facts of this case in detail in its Order on the parties' cross-motions for summary judgment, and incorporates that recitation by reference. (Order, ECF No. 61.) The evidence presented at trial largely mirrored those facts discussed in the Court's prior order. (*See id.*)

Briefly, TS is the last iteration of a series of partnerships that originally included Defendant Kim Lisa Taylor, but devolved over time. In the fallout of the dissolving partnerships, TS sued Taylor, and her new law firm, Syndication Attorneys, PLLC. (*See generally* Compl., ECF No. 1.) TS claimed at the outset of this case that Defendants "willfully and intentionally adopted and used [certain trademarks], which [were] confusingly similar to [TS's trademarks] to steal plaintiff's goodwill." (*Id.* ¶ 33.) TS also asserted claims for unfair competition on the theory that Defendants' use of the term "Syndication Attorney(s)" in business, is confusingly similar to the "Syndication Lawyers" marks, which TS claims to own.

On August 28, 2017, the Court granted Defendants' Motion for Partial Summary Judgment, and denied TS's Motion for Partial Summary Judgment. (MSJ Order, ECF No. 62.) The Court dismissed TS's first through third causes of action,

---

[1] After considering papers filed in support of and in opposition to the motions, the Court deemed them appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

which were all premised on TS's claim that it owned a trademark for the phrase, "Syndication Lawyers." (MSJ Order 8–9.) The Court reasoned that, because TS could not prove the validity of the "Syndication Lawyers" mark, it could not prevail on its claims for unfair competition and false designation of origin. (*Id.*) This was largely due to the fact that the United States Patent and Trademark Office ("USPTO") refused to register TS's trademark because it was "merely descriptive." (*Id.*)

On the other hand, the Court found triable issues of fact relating to the ownership of the domain names, and denied TS's Motion for Partial Summary Judgment on its conversion claim, and Defendants' declaratory judgment claim. (*Id.* at 5–7.)

On February 13, 2018, in advance of trial, the parties submitted an Amended Pretrial Conference Order ("AMPTCO").[2] (AMPTCO, ECF No. 101-1.) They presented two issues for trial: TS's claim for conversion, and Defendants' counterclaim for an accounting. (*Id.*) TS did not request injunctive relief in the AMPTCO; it requested damages. (*Id.* at 11.)

On February 20, 2018, the parties started a jury trial. (Min., ECF No. 103.) Before opening statements, the parties settled Defendants' counterclaim for an accounting, and memorialized their settlement agreement on the record. (*Id.*) Thus, the only issue tried to the jury was TS's claim for conversion of the domain names. On February 23, 2018, the jury returned a verdict in favor of TS, and found that TS had proven that "it owned, possessed or had the right to possess" the domain names that were presented at trial, and that Defendants "intentionally and substantially interfered" with the domains.[3] (Verdict, ECF No. 108.) Although the jury found Defendants converted all of the domain names, it also found that TS only suffered

---

[2] While the Court approved the AMPTCO submitted by the parties (ECF No. 101-1), a signed copy was not docketed. Accordingly, the Clerk shall docket the signature page in conjunction with issuing this Order.

[3] Defendants claim, in a footnote, that TS inserted domain names into the AMPTCO that were not originally in its Complaint. (Defs.' Mot. for Attys' Fees' 4 n.3, ECF No. 137.) The Court does not address this claim, as it is not material to the Court's ruling.

damages for the conversion of the domain name, "syndicationlawyers.com." (*Id.* at 5.) Accordingly, the jury awarded $7,800.00 in damages for that domain, and the Court entered judgment consistent with the jury's verdict on March 6, 2018. (Judgment, ECF No. 122.)

### III. LEGAL STANDARD

#### A. Motion for Permanent Injunction

TS purports to bring its motion for permanent injunction pursuant to Federal Rule of Civil Procedure 52(b). (Not. of Mot. for Inj. 1, ECF No. 126.) As noted by Defendants, Rule 52(b) applies to bench trials, where the Court must make findings of fact and conclusions of law. The parties tried this case to a jury, and thus it is not governed by Rule 52. Accordingly, the Court construes TS's Motion as a motion to amend the judgment, brought pursuant to Rule 59(e). *See Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) (holding courts should construe motions, "however styled, to be the type proper for the relief requested").

Rule 59(e) allows a party to move to amend the judgment no later than 28 days after the entry of judgment. District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). However, "a Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner*, 338 F.3d at 1063 (internal quotation marks, citations, and alterations omitted). "Since these criteria are not actually set forth in the text of Rule 59(e), a court 'enjoys considerable discretion in granting or denying the motion,' including for grounds

other than those listed above." *United States ex rel. Begole v. Trenkle*, No. EDCV0601104VAPOPX, 2012 WL 13071028, at *4 (C.D. Cal. Jan. 26, 2012) (quoting *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)).

## B.     Cross-Motions for Attorneys' Fees

The parties move for attorneys' fees on different theories. "In an action involving state law claims, [the Court] appl[ies] the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule." *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999). Documentation submitted in support of a motion for attorneys' fees must apprise the Court of the nature of the activity and should be sufficient to satisfy the Court that the hours expended were actual, non-duplicative, and reasonable. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1303 (C.D. Cal. 2015).

As described more fully below, in an action based on the Lanham Act, Courts may award attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). Interpreting Supreme Court precedent, the Ninth Circuit instructed district courts to evaluate the "'totality of the circumstances' to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors identified in [*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)], and using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (citing *Octane*, 134 S. Ct. at 1756). Courts may consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S. Ct. at 1756 n. 6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

Reasonableness is generally determined using the "lodestar" method, where a court considers the work completed by the attorneys and multiplies "the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel*

*Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The moving party bears the burden of producing evidence that the billing rates and hours worked are reasonable. *Id.* at 622–23. "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).

### IV. TS'S MOTION FOR PERMANENT INJUNCTION

TS argues that it is entitled to return of the domain names in light of its success on its conversion claim. In California, "[a]vailable remedies for conversion include specific recovery of property with damages for its detention and damages based on the value of the property." *Flores v. California Dep't of Corr. & Rehab.*, 224 Cal. App. 4th 199, 209 (2014) (citing Cal. Civ. Code §§ 3336, 3379; *Allstate Leasing Corp. v. Smith*, 238 Cal. App. 2d 128, 132–33 (1965)). A plaintiff also has the option to recover "damages for the value of the property at the time of conversion plus interest and the expense of pursuing the property." *Allstate Leasing*, 238 Cal. App. 2d at 132. TS urges the Court to exercise its equitable powers by requiring Defendants to return the domain names that the jury determined TS had a right to possess, in order to ensure "complete rather than truncated justice…." *FTC v. Commerce Planet*, 815 F.3d 593, 599 (9th Cir. 2016).

TS claims *FTC v. Commerce Planet* supports its position because there the court held that a court sitting in equity may "go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances." *Id.* Defendants first distinguish *Commerce Planet* because the court relied on a federal statute that permitted injunctive relief, whereas here TS premised its claim on a conversion theory. *Id.* at 598–99 (discussing broad authority for injunctive relief granted by the FTC Act). Like the federal statute at issue in *Commerce Planet*, California provides

for injunctive relief on a conversion claim. *Allstate Leasing*, 238 Cal. App. 2d at 132 (citing Cal. Civ. Code §§ 3379; Cal. Code Civ. P. §§ 509, 627, 667) ("Allstate's remedies include specific recovery of the property, or its present value, plus damages for the period of its detention...."). However, in the parties' AMPTCO, TS only identified, as an issue to be tried, that "Plaintiff must prove its damages for Defendants' conversion." (AMPTCO, ECF No. 101-1.) TS made no mention that it sought injunctive relief. (*See id.*)

TS argues that, because it requested injunctive relief in its Complaint, the Court should fashion the judgment to include an injunction, pursuant to Rule 54(c). Rule 54(c) provides that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." However, legal theories not presented in the AMPTCO cannot be presented at trial. *See Acorn v. City of Phoenix*, 798 F.2d 1260, 1272 (9th Cir. 1986), *overruled on other grounds by Comite de Jomaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011). And a pretrial conference order can only be modified after the pretrial conference "to prevent manifest injustice." Fed. R. Civ. P. 16(e).

In *Walker v. Anderson Electrical Connectors*, the Eleventh Circuit addressed a situation very similar to that presented here. 944 F.2d 841, 844 (11th Cir. 1991). There, a Title VII plaintiff sought money damages, injunctive relief, and a declaratory judgment in her complaint for sexual harassment against her employer. *Id.* at 842–43. In the pretrial conference order, the plaintiff dropped her claims for injunctive and declaratory relief, and only sought monetary damages. *Id.* The jury returned a verdict and found that the defendant committed acts of sexual harassment in violation of Title VII, but that the plaintiff had sustained no monetary damages as a result of the violations. *Id.* at 843. Plaintiff moved post-trial for an injunction and declaratory relief, in light of the jury's verdict. *Id.* The *Walker* court construed the plaintiff's motion as a motion to modify the pretrial conference order under Rule 16(e). *Id.* at 844. In upholding the trial court's denial of an injunction, the court explained that

"Rule 54(c) requires that the district court grant [the plaintiff] only the relief to which she [was] 'entitled,' even when that relief is not requested in the pleadings. But [the plaintiff] *did* request a declaratory judgment and injunction in her pleadings and then abandoned this form of relief at the pre-trial conference in favor of something else, namely a money award." *Id.* ("Rule 54(c) simply does not sanction this type of maneuvering.").

Like in *Walker*, TS initially requested injunctive relief, but then abandoned that request in the AMPTCO. TS has not demonstrated manifest injustice such that the Court should amend the judgment. *See id.* Further supporting the denial of TS's request for an injunction, are the instructions given to the jury. The Court instructed the jury that TS claimed damages for the "fair market value of the domain registrations at the time [Defendants] wrongfully exercised control over them…or Special Damages resulting from [Defendants'] conduct; and Reasonable compensation for the time and money spent by TS in attempting to recover the domain registrations." (Jury Instruction No. 39, ECF No. 110.) Thus, when the jury returned its verdict finding that TS was entitled to $7,800 for the conversion of "syndicationlawyers.com," it had been instructed to consider the fair market value of the domain at the time Defendants' converted it. (*See id.*) California law provides for the recovery of the fair market value of converted property at the time of conversion, *or* specific recovery and damages for loss of use, but not both. *Allstate Leasing*, 238 Cal. App. 2d at 132. Because, as instructed, the jury presumably awarded TS the fair market value of the converted domain name, an amended judgment providing an injunction would be an impermissible double recovery to the extent that TS's monetary recovery was premised on the complete loss of the domain name, as opposed to a loss of use. *Cf. Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (discussing rule that juries are presumed to follow their instructions).

TS cites *Express Media Group LLC v. Express Corporation*, and claims that it supports its position because the court granted injunctive relief after entering summary

judgment in the plaintiff's favor. No. C 06–03504 WHA, 2007 WL 1394163, at *3 (N.D. Cal. May 10, 2007); (Mot. 4, ECF No. 126.) There, the court noted the varying remedies available to a conversion plaintiff, and explained that the plaintiff submitted unrebutted evidence that the defendant converted certain domain names, and that, in its motion, the plaintiff asked for an order requiring defendants to return the domain name. *Id.* On those facts, the court entered summary judgment, and required defendant to return the domain name. *Id.* Unlike *Express*, TS did not request injunctive relief in a motion for summary judgment; it now seeks to revise the AMPTCO and/or amend the judgment after the case has already been tried to a jury.

Next, TS improperly attributes a quote to *Express* in its moving papers. (Mot. 4, ECF No. 126 ("For these reasons, the Court finds that Defendants are liable to Plaintiffs for conversion of the rl.com domain. As a remedy, Plaintiffs are entitled to specific recovery of the domain.") The quote is from another case where a court granted summary judgment in favor of a plaintiff, and required the defendant to return a converted domain name. *CRS Recovery, Inc. v. Laxton*, No. C 06–7093 CW, 2008 WL 4427944, at *8 (N.D. Cal. Sept. 26, 2008), *rev'd and remanded* 600 F.3d 1138 (9th Cir. 2010). In addition to the fact that the Ninth Circuit reversed and remanded because it found triable issue regarding an abandonment defense, like in *Express*, the plaintiff in *CRS Recovery* affirmatively requested injunctive relief in its motion for summary judgment. *Id.* at *1. Had TS proceeded in the same fashion as the plaintiffs in *Express* and *CRS Recovery*, these cases might be persuasive. However, TS dropped its claim for injunctive relief in the AMPTCO, and cannot now revive from the dead the claims it abandoned. *Walker*, 944 F.2d at 844 (holding plaintiff not entitled to injunctive relief where jury found in her favor, but awarded no damages, and where plaintiff dropped claims for injunctive relief in the pretrial order). Accordingly, the Court **DENIES** TS's Motion for Permanent Injunction. (ECF No. 126.)

# V. CROSS-MOTIONS FOR ATTORNEYS' FEES & TO BE DECLARED PREVAILING PARTY

TS argues it is entitled to attorneys' fees because it is the prevailing party, and the parties' partnership agreement provides for the recovery of attorneys' fees for breaching the agreement. (TS's Mot. for Fees 3, ECF No. 128.) Defendants similarly contend that they are the prevailing parties, and are entitled to fees pursuant to the Lanham Act. (Defs.' Motion for Fees 1, ECF No. 127.)

## A. Defendants' Motion for Attorneys' Fees

Defendants rely on the Court's Order granting partial summary judgment in their favor on TS's first, second, and third causes of action, which were all based on TS's allegation that it owned a trademark for the phrase, "Syndication Lawyers." Under the Lanham Act, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117(a); *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 505 (9th Cir. 2011) (holding that de novo review applies to the issue of whether a case is "exceptional," and reviews a district court's grant of attorneys' fees in an "exceptional case" for abuse of discretion). The parties agree that the analysis of whether a case is "exceptional" is set forth in *Octane Fitness*. 134 S. Ct. at 1756.

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. Under the 'totality of the circumstances' approach, district courts may consider a ''nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Reserve Media, Inc. v. Efficient Frontierts, Inc.*, No. 215CV05072DDPAGRX, 2017 WL 2562098, at *2 (C.D. Cal. June 12, 2017) (quoting *Octane Fitness*, 134 S. Ct. at 1756 n.6).

| | |
|---|---|
| 1 | Simply because the Court granted Defendants' summary judgment on TS's first |
| 2 | three claims does not mean that this case is exceptional. *Reserve Media, Inc.*, 2017 |
| 3 | WL 2562098, at *2 (citing *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. |
| 4 | 3d 1111, 1114 (C.D. Cal. 2015)) ("[T]he fact of prevailing at summary judgment |
| 5 | alone is insufficient to entitle party to fees under the Lanham Act."). Defendants |
| 6 | argue that *Reserve Media* is distinguishable because there the plaintiff already owned |
| 7 | several registered trademarks, whereas here TS did not. (Defs.' Reply on Fee Mot. 7– |
| 8 | 8, ECF No. 140.) Instead, TS knew that it did not have a trademark in the phrase, |
| 9 | "Syndication Lawyers," because the USPTO had denied TS's application before it |
| 10 | sued Defendants. (Defs.' Mot. for Fees 5, ECF No. 127.) While this is true, TS |
| 11 | presented evidence that Taylor submitted her own trademark application for the |
| 12 | allegedly infringing mark, "syndicationattorneys.com," leading to the inference that |
| 13 | even she thought the phrase had a secondary meaning, and was capable of protection. |
| 14 | (Declaration of Ben Lila ("Lila Decl."), Ex. 1, ECF No. 133-1.) |
| 15 | "If a plaintiff has raised 'debatable issues' and can be found to have had a |
| 16 | legitimate reason for bringing the lawsuit, it supports a finding that a case is not |
| 17 | exceptional." *Caiz v. Roberts*, No. CV1509044RSWLAGRX, 2017 WL 830386, at *4 |
| 18 | (C.D. Cal. Mar. 2, 2017) (citing *Nutriva Labs., Inc. v. VBS Distrib. Inc.*, 160 F. Supp. |
| 19 | 3d 1184, 1192 (C.D. Cal. 2016)). While TS lost its trademark claims on summary |
| 20 | judgment, it ultimately prevailed on its claims for conversion relating to the domain |
| 21 | names that were the subject of its Complaint, and the phrase that was the subject of its |
| 22 | trademark application. Accordingly, on balance, the Court cannot find that this case is |
| 23 | exceptional, such that it warrants a fee award under *Octane Fitness*. Accordingly, the |
| 24 | Court **DENIES** Defendants' Motion for Attorneys' Fees. (ECF No. 127.) |
| 25 | **B.     TS's Motion for Attorneys' Fees** |
| 26 | TS argues that it is the prevailing party, and, as such, it is entitled to attorneys' |
| 27 | fees pursuant to the Trowbridge, Taylor & Sidoti LLP Partnership Agreement (the |
| 28 | "Agreement"). (Pl.'s Mot. for Fees 4, ECF No. 128.) The Agreement provides: "the |

Breaching Partner shall be liable in damages…to the Partnership for all costs and liabilities that the Partnership or any Partner may incur *as a result of such breach, including reasonable attorneys' fees incurred in connection with the breach and in connection with recovery of damages from the Breaching Partner.*" (Lila Decl., Ex. A ¶ 17 (emphasis added).) While not entirely clear, TS seems to argue that Defendants breached paragraph 19 of the Agreement, which states: "No Partner shall have any ownership interest in the Partnership property in his or her own individual name or right." (*Id.* at Ex. A ¶ 19.)

Federal courts apply state law in interpreting contracts that provide for recovery of attorneys' fees. *See, e.g.*, *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999) (applying California law to interpret attorneys' fee provision). In *Marsu*, the Ninth Circuit analyzed a contract that provided for recovery of attorneys' fees to the prevailing party in "any action" to resolve "any dispute, difference, claim or counterclaim between the parties arising out of or in connection with" the agreement. *Id.* at 939. It held that, under California law, the fee provision was broad enough to encompass tort claims that arose "out of or in connection with" the contract. *Id.* (citing *Lerner v. Ward*, 13 Cal. App. 4th 155, 160 (1993)). The attorneys' fee provision TS relies on, however, is not nearly as broad. (*See* Lila Decl., Ex. A ¶ 17 (providing for fees "as a result of such breach" of the Agreement).)

TS contends that *Gonzales v. Personal Storage, Inc.* supports its claim for attorneys' fees. 56 Cal. App. 4th 464, 480 (1997). In *Gonzalez*, the California Court of Appeal interpreted a lease with a fee provision that provided for fees in relation to "any legal action" to include an action in tort, as well as contract. *Id.* at 480. TS then argues, without any further explanation, that "any violation of the partnership agreement by a partner resulting in costs or liabilities to the partnership allows recovery of attorneys' fees." (Pl.'s Mot. for Fees 4, ECF No. 128.) While the Agreement provides for fees "as a result of such breach," TS did not bring an action for breach of the partnership agreement; it only asserted claims for conversion, unfair

competition, and false designation of origin. (*See generally* Compl., ECF No. 1.) As explained further below, the Court finds that TS is not entitled to fees under the partnership agreement.

First, and most fundamentally, the only plaintiff in this action, TS, is not a party to the Agreement, nor was it a partner in Trowbridge, Taylor & Sidoti LLP. (*See* Lila Decl., Ex. A.) TS is an entity that was created after Taylor left Trowbridge, Taylor & Sidoti LLP. None of the individual partners of Trowbridge Taylor & Sidoti LLP were named as plaintiffs in this case, nor did they bring an action for breach of the Agreement. In fact, the ownership of domains that were the subject of TS's conversion claims may or may not have been governed by the Agreement because many of the domains were purchased before the partners executed the Agreement. (*See* Lila Decl., Ex. A.) How TS claims to have standing to assert its claim for fees when (1) it was not a party to the Agreement, and (2) it did not sue for breach of the Agreement, is puzzling.

Finally, the fee provision in the partnership agreement is extremely narrow. It provides for fees that were incurred "as a result" of a breach of the Agreement. (Lila Decl., Ex. A ¶ 17.) This provision is narrow, and cannot be extended to this action by TS to recover on a theory of conversion. *See Casella v. SouthWest Dealer Servs., Inc.*, 157 Cal. App. 4th 1127, 1161–62 (2007) (holding narrow provision limiting fees to those "'incurred in enforcing or attempting to enforce'" employment agreement did not permit recovery of fees former employee incurred in prosecuting wrongful discharge tort claim against employer); *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 708–09 (1998) (holding provision that provided for fees in "action or proceeding to enforce the terms [of the lease] or declare rights hereunder" too narrow to sustain fee award in action sounding in tort). TS provides no other

1 authority under which it would be entitled to attorneys' fees. Accordingly, the Court
2 **DENIES** TS's Motion for Attorneys' Fees.[4] (ECF No. 128.)

### C. Prevailing Party

While attorneys' fees are not appropriate in this case for the reasons discussed above, the Court still must determine the prevailing party for purposes of a costs award. *See* C.D. L.R. 54-1. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). TS contends it is the prevailing party because it succeeded on its claim for conversion when the jury found that it possessed, or had the right to possess, the domain names, and awarded damages of $7,800, relating to the "syndicationlawyers.com" domain. On the other hand, Defendants argue that they are the prevailing parties because the Court entered summary judgment on three of TS's claims originally asserted in its Complaint, and achieved a favorable settlement on Taylor's counterclaim. (Defs.' Mot. for Fees 11–12, ECF No. 127.) "A court must choose one, and only one, 'prevailing party' to receive any costs award." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010).

"The rub, of course, is choosing the 'prevailing party' in a mixed judgment case like this one." *Id.* The Court is presented with an especially difficult case here. While Defendants quantitatively prevailed on the number of claims on which they succeeded, TS prevailed on the thrust of its Complaint, which was that Defendants used the domain names without the proper authority to do so. Indeed, even the trademark and unfair competition claims were directed at Defendants' allegedly unlawful use of the domain names. Here, the jury returned a verdict in TS's favor, and found that Defendants interfered with TS's right to possess the domain names. That TS abandoned its claim for an injunction in the AMPTCO is an unfortunate

---

[4] Because the Court denies both parties' motions for attorneys' fees the Court does not consider the objections lodged in support of their oppositions, nor does it consider TS's request that the Court strike the Notice of Errata to Corrected Declaration of Craig Gelfound as untimely.

blunder, but does not detract from the sentiment of the jury's verdict—that TS prevailed on its claims that Defendants unlawfully interfered with its right to possess the domain names. On balance, these facts demonstrate TS is the "prevailing party" because Defendants' behavior was modified in a way that benefits TS. *See Farrar*, 506 U.S. at 111–12. The jury awarded damages that Defendants must pay to TS. (Verdict, ECF No. 108.) Accordingly, TS is entitled to costs as the prevailing party.

## VI. CONCLUSION

For the reasons discussed above, the Court **DENIES** TS's Motion for Permanent Injunction (ECF No. 126), **DENIES** both parties' Motion for Attorneys' Fees (ECF Nos. 127, 128), and determines TS is the prevailing party

**IT IS SO ORDERED.**

June 4, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**